DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Lawrence County Common Pleas Court, Probate-Juvenile Division, judgment that modified the child support obligation of Michael B. Huddle, defendant below and appellant herein. Appellant raises the following "argument" as an assignment of error:[1]
"The trial court erred and abused its discretion by not complying with the Ohio Child Support Guidelines in the computation of the Appellant/Defendant's Child Support Obligation in both the amount of the Appellant/Defendant's Income and the Credit of the Appellant/Defendant's Payment for another child support obligation."
 {¶ 2} Janet Johnson, plaintiff below, is the natural mother of Nathaniel B. Johnson (d/o/b 9-24-89). On March 2, 1992, she filed a parentage action against appellant and alleged that he is the child's natural father. See R.C. Chapter 3111. Appellant initially denied the allegation. A subsequent blood test revealed a 99.21% probability of paternity. Subsequently, appellant admitted that he is Nathaniel's father and the trial court issued a judgment that determined parentage and ordered appellant to pay child support.[2]
 {¶ 3} On December 14, 2001, appellant requested the court to reduce his child support obligation. Appellant asserted (1) that he had been laid off from his job and that his sole source of income is unemployment compensation; and (2) that he is paying child support in another pending case in Franklin County. The trial court ultimately dismissed appellant's motion because the Franklin County case was undergoing its own modification proceeding at that time. The court indicated, however, that appellant could refile his motion once the Franklin County case had been completed.
 {¶ 4} On June 19, 2002 appellant again requested the trial court to modify child support due to his diminished income. The matter came on for hearing before a magistrate and the evidence revealed that appellant had worked as an electrical engineer at Lucent Technologies in Columbus. Before his 2001 lay off, appellant earned approximately $59,000 per year and had earned more than $50,000 per year for a couple of years prior to 2001. Since appellant's lay off, however, his income had substantially decreased and he now receives $19,000 per year in unemployment compensation.
 {¶ 5} The magistrate's September 11, 2002 report recommended that appellant's child support obligation be modified from $555.91 per month to $455.91 per month. The magistrate arrived at that figure by averaging appellant's annual income for the last three years, including the year that he received unemployment compensation and the years when he worked and earned over $50,000 per annum. The average income for those years is $42,666.67, which was incorporated into the child support worksheet rather than the $19,000 that appellant received in unemployment compensation. That figure was then used to arrive at the new support obligation.
 {¶ 6} Appellant objected to the magistrate's decision and on December 30, 2002, the trial court sustained those objections and determined that the magistrate should have averaged appellant's income over four years rather than three years. On January 30, 2003, the trial court set appellant's new support obligation at $251.82 per month. Appellant filed a motion for reconsideration and argued that this amount was calculated at with faulty figures used by the Child Support Enforcement Agency (CSEA), plaintiff below and appellee herein, in CSEA's worksheet completed for the court. On February 14, 2003, the trial court vacated that judgment and issued a new judgment on July 8, 2003 that set the support obligation at $388.50 per month. This appeal followed.
 {¶ 7} Before we address the "assignment of error" on its merits, we first pause to consider how the trial court arrived at the $388.50 per month child support obligation. It appears that the figure was ultimately derived from a child support computation worksheet that showed appellant's "gross income" as $38,000. The worksheet is unclear as to how that income figure was arrived at[3] and we thus presume that the trial court averaged appellant's income. We find nothing in the record, however, to show what years were used or what incomes were assigned for those years. Appellant argues in his brief that the court averaged his income for the last three years to arrive at the $38,000 amount. Though not entirely clear from the trial court's July 8, 2003 judgment, we will assume that this was the case.[4]
 {¶ 8} The next question is what incomes were averaged. We assume that the following figures were used:
Year Income
2000 $55,000[5]
2001 $45,000[6]
2002 $14,000[7]
Total: $114,000/3 years = $38,000
 {¶ 9} Because these figures produce the result used in the computation worksheet, we assume that the CSEA and the trial court used these amounts.
 {¶ 10} We now proceed to the merits of the assignment of error wherein appellant argues that the magistrate and the trial court erred in averaging his income over three years. We agree with appellant.
 {¶ 11} The first item included in the statutory Child Support Computation Worksheet is the father's annual gross income. See R.C. 3119.022. Gross income is defined, inter alia, as the total of all earned and unearned income from all sources during a calendar year. R.C. 3119.01(B)(7). This definition defines "income" as that which is earned during a single calendar year and does not allow for averaging of income over multiple years.
 {¶ 12} Nevertheless, in appropriate circumstances trial courts may average income over a reasonable period of years. See R.C. 3119.05 (H). The decision to average income lies within the trial court's discretion and will not be reversed absent an abuse of that discretion. See McGuire v. McGuire (Mar. 8, 2002), Scioto App. No. 01CA2789; Ferrero v. Ferrero (Jun. 8, 1999), Stark App. No. 98CA00095; Luke v. Luke (Feb. 20, 1998), Lake App. No. 97-L-044. We note that an abuse of discretion is more than an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary or unconscionable.See Landis v. Grange Mut. Ins. Co. (1998), 82 Ohio St.3d 339,342, 695 N.E.2d 1140; Malone v. Courtyard by Marriott L.P.
(1996), 74 Ohio St.3d 440, 448, 659 N.E.2d 1242; State ex rel.Solomon v. Police Firemen's Disability Pension Fund Bd.of Trustees (1995), 72 Ohio St.3d 62, 64, 647 N.E.2d 486. Additionally, when applying the abuse of discretion standard, appellate courts must not substitute their judgment for that of the trial court. See State ex rel. Duncan v. Chippewa Twp.Trustees (1995), 73 Ohio St.3d 728, 732, 654 N.E.2d 1254; In reJane Doe 1 (1991). 57 Ohio St.3d 135, 137-138, 566 N.E.2d 1181;Berk v. Matthews (1990), 53 Ohio St.3d 161, 169, 559 N.E.2d 1301.
 {¶ 13} Recently, in McGuire, supra, we noted that income averaging is typically used in those situations in which an obligor's income is unpredictable or fluctuates within his or her profession. In that case, we concluded that the trial court erred by averaging income when the income did not fluctuate but, instead, had decreased significantly due to a disabling injury.
 {¶ 14} The same principle applies in the case sub judice. Appellant's income did not fluctuate within his job. Rather, appellant lost his job. His income has dropped precipitously and will not rise again until he has located a new job. Thus, we believe that income averaging pursuant to R.C. 3109.05(H) is inappropriate here. We note that our holding on this point is buttressed by other decisions that indicate that income should not be averaged in unemployment situations without at least finding that the obligor is voluntarily unemployed or underemployed. See Kouris v. Kouris, Cuyahoga App. No. 81237, 2003-Ohio-1831, ¶¶ 13-16; also see Justinger v. Schlegel (Jul. 15, 1997), Paulding App. No. 11-97-3 (obligor retired).
 {¶ 15} Appellee counters that appellant, prior to his lay off, had significant pay increases since his most recent support obligation modification, but that he failed to report those increases to CSEA. Thus, appellee reasons, appellant's support obligation should have been adjusted upward. Appellee further points out that appellant sold his Columbus house and bought a less expensive one in the "tri-state area" with cash. Thus, appellee reasons, appellant has no housing expenses. While these may be appropriate factors to consider for other purposes, we are not persuaded that they have any bearing on the fact that unemployment is not an appropriate situation in which to average income — particularly when there is no finding that appellant was voluntarily unemployed.
 {¶ 16} Appellant also argues in his assignment of error that the trial court erred by failing to give him credit for child support that he paid for another child in Franklin County. Again, we agree. Line nine (9) of the Child Support Computation Worksheet set out in R.C. 3119.022 provides for an adjustment to income for "annual court ordered support paid for other children." In the instant case, the worksheet attached to the trial court's July 8, 2003 judgment provides no adjustment to appellant's income for the amount that he pays to support his son in Franklin County.[8]
 {¶ 17} For all these reasons, the assignment of error is well-taken and is hereby sustained. We reverse the trial court's judgment and remand the matter to the trial court for further proceedings consistent with this opinion. At that time, the trial court may consider whether this is an appropriate case for imputed income as defined by R.C. 3119.01 (B)(11)(a)(b) due to voluntary unemployment/underemployment or because of non-income producing assets (e.g. appellant's home for which he paid cash).
Judgment Reversed and Case Remanded for further proceedings consistent with this Opinion.
Kline, P.J. and Harsha, J., concur in Judgment Opinion.
[1] Initially, we note that appellant's brief does not contain "assignments of error" as required by App.R. 16(A). Additionally appellant's brief does not contain (1) a statement of facts and (2) a statement of issues. See App.R. 16(A)(4)(6). Because appeals are decided on the basis of the merits of the assignments of error, App.R. 12(A)(1)(b), we would be well within our discretion to dismiss the appeal. Nevertheless, in the interests of justice we will consider the issue that the appellant raises.
[2] Appellant's child support obligations were increased over the years as his income grew. The last modification secured in 1997 and was based on an annual income of $38,000.
[3] We find no evidence adduced during the trial court proceeding to indicate that this amount was appellant's income.
[4] We note that if CSEA averaged appellant's last three years of income, this violated the trial court's December 30, 2002 entry that ordered that appellant's income be averaged for four years, not three. Because the parties did not explain this inconsistency in their briefs, and because the trial court apparently accepted the figure notwithstanding its previous order, we will disregard that problem for purposes of our review.
[5] Even though the Magistrate and trial court had previously used a figure of $50,000 for 2000, appellant testified at the hearing that he actually earned $55,000.
[6] See appellant's motion for reconsideration wherein he asserts that, despite earning a salary of $59,000 for the year, he did not work a full year and, thus, his W-2 reflected a $45,000 income.
[7] See appellant's motion for reconsideration wherein he asserts that although unemployment compensation paid roughly $19,000 per year, his unemployment terminated part way through 2002 and that he received only $14,000.
[8] Because appellee does not address this issue in its brief, we assume that it concedes the error.