[Cite as *Krone v. Krone*, 2011-Ohio-3196.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| DAVID KRONE | C.A. No. 25450 |
| Appellant | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| JODI KRONE | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellee | CASE No. 2008-06-1714 |

DECISION AND JOURNAL ENTRY

Dated: June 29, 2011

MOORE, Judge.

{¶1} Appellant, David Krone, appeals from the judgment of the Summit County Court of Common Pleas, Domestic Relations Division. This Court affirms in part and vacates in part.

I.

{¶2} David and Jodi Krone were married on March 13, 1993, and they had two children during the marriage. At the time of the trial, Wife was forty-four years old. She attended Kent State University prior to the marriage but did not complete her degree. After the marriage, she stopped working outside the home and remained a fulltime homemaker throughout the marriage. She returned to school part time in 2007 to obtain a degree in interior design.

{¶3} At the time of the trial, Husband was forty years old and was self-employed as a commercial real estate broker. He obtained his GED in 1985 and worked in the commercial real estate field throughout the majority of the marriage.

{¶4}    Husband filed a complaint for divorce on June 10, 2008.  Wife filed an answer and counterclaim on July 21, 2008.  A hearing for temporary orders was held on August 5, 2008, resulting in a magistrate's order on November 26, 2008.  Both Husband and Wife filed motions to set aside the magistrate's order.   On February 6, 2009, Wife's motion was sustained and Husband's motion was overruled.

{¶5}    On December 8, 2008, Husband filed a motion to modify the temporary orders.  On January 26, 2009, Wife filed a motion for payment of support arrears, contempt, and expert/legal fees.  An evidentiary hearing was held on both motions before the trial court on July 22, 2009 and July 24, 2009.   On July 30, 2009, the trial court issued a journal entry which reduced Husband's temporary support obligations and found him in contempt.  A trial took place in this matter on April 1, 2010 and April 2, 2010.  A final decree of divorce was entered on June 4, 2010.    Wife was awarded spousal support totaling $668,644.  Husband was ordered to pay Wife $6,000 per month until payment was made in full.  The court reserved jurisdiction to modify the award.

{¶6}    Husband timely filed this notice of appeal and presents four assignments of error for our review.  We have consolidated some assignments of error to facilitate our review.

II.

## ASSIGNMENT OF ERROR I

"THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN ITS CALCULATION OF [HUSBAND'S] INCOME."

## ASSIGNMENT OF ERROR II

"THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN THE AMOUNT AND DURATION OF SPOUSAL SUPPORT AWARDED TO [WIFE]."

**{¶7}** In his first and second assignments of error, Husband contends that the trial court erred in its calculation of his income and in the amount and duration of the spousal support award. We do not agree.

**{¶8}** This Court reviews a trial court's award of spousal support under an abuse of discretion standard. *Brubaker v. Brubaker*, 9th Dist. No. 22821, 2006-Ohio-1035, at ¶7, citing *Pauly v. Pauly* (1997), 80 Ohio St.3d 386, 390; *Booth v. Booth* (1989), 44 Ohio St.3d 142, 144. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219.

Calculation of Husband's Income

**{¶9}** The record in this case clearly details the difficulty the trial court had in determining Husband's income. Husband and Wife led a lavish lifestyle that included multiple vacations every year, country club memberships, expensive gifts, and frequent meals out. Husband had built a successful real estate enterprise consisting of ownership in many business enterprises. According to his tax filings for 2005-2007, Husband reported an adjusted gross income of $624,632, $201,407, and $72,576 respectively. In a draft version of his 2008 tax filing, his adjusted gross income was listed as a loss of $40,435. In the actual 2008 filing, his adjusted gross income was listed as $161,866. In a draft version of his 2009 tax filing, his adjusted gross income was listed as $3,786. In various loan applications for the same time he represented that his income was $700,000 in 2005, $800,000 in 2006, and $550,000 in 2007.

**{¶10}** The record indicates that Husband's testimony was inconsistent at best. At the temporary hearing in August 2008, he testified that his income would be $85,000 for the entire year. However, he also testified that he had already received $85,000 by June 2008. As stated

above, his tax filing indicated that his 2008 adjusted gross income was $161,866. His bank records indicate that he made deposits totaling $159,642.32 in just the first six months of 2008.

{¶11} To further complicate matters, the majority of Husband's personal expenses were charged to his business credit cards, some of which included: charges for vehicle expenses, travel, many meals, litigation fees, child support payments, and monthly massage appointments for his girlfriend and himself. He testified that he had exclusive control of these charges. He testified that his accountant would determine what portion could be deducted for tax purposes at the end of each year. However, upon request by Wife's counsel, the accountant was unable to provide any supporting documentation to demonstrate which charges were personal in nature, and which were appropriately charged to the business.

{¶12} It is not disputed that Husband's income decreased dramatically with the decline of the real estate market. Husband testified that, in response, he attempted to reduce his expenses by implementing many reductions. The record indicates that he downsized from a Porsche to a $54,731.50 Mercedes. On May 1, 2009, he entered into a lease agreement with his girlfriend for an apartment that cost $2,730 per month. The profit and loss statement for the business demonstrates that Husband spent $105,977.46 on travel expenses and $24,798.46 on meals and entertainment in 2008.

{¶13} Due to the difficulty in determining Husband's income, each party presented an expert witness to testify. Husband presented the expert testimony of Jason Bogniard. He testified that he reviewed the personal tax returns for the Krones, as well as the financial documents for the entities partially owned by Husband, including the general ledgers, financial statements, and contribution and distribution schedules. He created a report to show the "cash income that was available to the Krones for the years 2005 through 2008." He made adjustments

to the adjusted gross income reported on the tax returns to account for the real spendable cash for each year. In doing so, he backed out the income that flows through the entities but does not reflect cash actually received. His testimony indicated that he relied on the accountant's calculations to know which business expenses were personal in nature and should be considered income to Husband. In addition, he added back the personal use of a vehicle and $13,900 of nondeductible professional costs. His report found the total cash income earned and available for spousal and child support purposes to be: $270,991 in 2005, $251,455 in 2006, $215,847 in 2007, $242,349 in 2008, and $33,104 in 2009.

{¶14} Wife presented the expert testimony of Mark Bober. He testified that he reviewed historical tax documents, internal financial statements, trial balance sheets, general ledgers, and underlying records to provide an assessment of Husband's income back to 2005. He prepared a summary schedule of Husband's total income and benefits for 2005-2009. To do so, he began with a subtotal of all income from the business entities, including distributions and contributions, added Husband's W-2 income, and added adjustments relating to items that appeared to be expensed through the business where there appeared to be a personal benefit derived from the expenses. These items included personal legal and professional fees, a Costco membership, car payments, travel and entertainment. Mr. Bober testified that because the IRS requires some supporting documentation to demonstrate that it is a legitimate business expense, and because Husband was unable to provide any such supporting documentation, he included the travel and entertainment in Husband's income. Husband provided Mr. Bober with all underlying credit card statements, but did not provide any guidance so that he could determine which were legitimate business expenses and which were personal expenses. He found Husband's total

income and benefits to be: $418,857 in 2005, $479,984 in 2006, $333,201 in 2007, $475,449 in 2008, and $108,317 in 2009.

{¶15} The trial court concluded that "[t]he parties['] IRS returns for the past three (3) years are not useful in determining the parties' actual incomes because of the personal expenses charged to the business entities." The trial court noted that Husband's earnings were "at a historical low point" but that his income "should attain prior levels as the economy and his industry recover." The trial court accepted the Wife's estimate of Husband's income, and averaged the earnings for 2007, 2008, and 2009.

{¶16} "It is well established that the trier of fact is to determine the weight to be given to expert testimony." *Jensen v. Jensen* (Mar. 8, 1995), 9th Dist. No. 94CA005808, at *2, citing, *Vetter v. Hampton* (1978), 54 Ohio St.2d 227, 230. Having had the opportunity to hear the testimony of the experts, the trial court concluded that Mr. Bober's valuation was more appropriate. See *Schrader v. Schrader* (Jan. 21, 1998), 9th Dist. No. 2664-M, at *7. As noted, the trial court has broad discretion to make such findings. *Brubaker* at ¶7.

{¶17} Upon our review of the record, we conclude that the trial court did not abuse its discretion in choosing to accept the Wife's estimate of Husband's income.

{¶18} In addition, we conclude that the trial court did not err in averaging Husband's income for the prior three years in order to calculate spousal support. In *Smith v. Smith* (Jan. 12, 2001), 6th Dist. No. H-99-029, the Sixth District upheld the trial court's decision to average the husband's income to reach an income figure for spousal support calculations because the expert testified that "it was important to average farming income * * * because farming income is very volatile." Id. at *6.

{¶19} Throughout the trial, there were many times when Husband requested that the trial court average his income. The income summary report generated by his expert included a three-year average of his income. He now argues that it was an abuse of discretion to do so because the real estate market has dramatically declined and because the parties lived together during a portion of those years and "therefore [Wife] enjoyed the benefit of [Husband's] higher income during that time." Given the fact that Husband's income varied greatly over the years, and that he has substantial control over the business expenses and ultimately his "income," the trial court did not abuse its discretion in choosing to average Husband's income for the three prior years. See, *Coors v. MacEachen*, 1st Dist. No. C-100013, 2010-Ohio-4470, at ¶18 (concluding that the trial court did not abuse its discretion because it "retained jurisdiction to modify the amount of spousal support so that if [Husband's] income may rise significantly, the court can modify the award accordingly.") See also, *Gore v. Gore*, 2d Dist. No. 09-CA-64, 2010-Ohio-3906, at ¶22 (concluding that the calculation of spousal support was appropriate because "when the economy recovers (assuming it does) [Husband] will begin earning regular commissions.") Accordingly, Husband's first assignment of error is overruled.

Duration and Amount of Support

{¶20} Husband argues that the trial court erred in the duration and amount of the spousal support awarded because it failed to consider his payment of temporary spousal support and because it awarded an amount he "cannot reasonably be expected to be able to pay[.]"

{¶21} The trial court stated that it considered the R.C. 3105.18(C)(1) statutory factors, in particular, Husband's current earnings and earning ability, the length of the marriage, the fact that it is appropriate for Wife to seek employment, and that Wife will complete her education within the term of the award of spousal support. In applying the statutory factors, the trial court

8

recognized that Husband has a much greater earning ability than Wife. The trial court acknowledged that Wife had been primarily a homemaker during the marriage, but found it appropriate for her to now seek work. It determined "that based on the past, present and probable future incomes of the parties that Husband's total spousal support obligation should be $668,644." This was calculated by multiplying the annual average by one-third the length of the marriage (sixty-eight months). In consideration of Husband's current income, the trial court determined that he could not pay $9,833 per month in spousal support in addition to child support, and ordered him to pay $6,000 per month until payment was made in full.

{¶22} A trial court is bound to consider all the factors contained in R.C. 3105.18(C)(1) in awarding spousal support; however, the amount of support remains within the discretion of the trial court. *Moore v. Moore* (1992), 83 Ohio App.3d 75, 78. "If the court does not specifically address each factor in it's [sic] order, a reviewing court will presume each factor was considered, absent evidence to the contrary." (Citations omitted.) *Wheeler v. Wheeler* (Dec. 12, 2001), 9th Dist. No. 3188-M, citing *Schrader*, 9th Dist. No. 2664-M.

{¶23} Husband argues that the duration of the spousal support award was an abuse of discretion. He relies on *Straube v. Straube* for the proposition that a six-year spousal support award was "too long of a duration for the court to predict the parties' incomes and monthly expenditures." *Straube v. Straube* (Aug. 10, 2001), 11th Dist. No. 2000-L-074. In *Straube*, the Eleventh District found that the trial court abused its discretion by awarding such spousal support without reserving jurisdiction to consider a motion to modify spousal support. Here, the trial court properly retained jurisdiction to consider such a motion. Husband's argument is without merit.

**{¶24}** He further argues that the trial court erred when it failed to consider his "payment of temporary spousal support for twenty-two months when determining the duration" of his obligation. He cites no case law for this proposition. The parties stipulated that that there was a support arrearage of $47,279.94. While his temporary spousal support payments were in arrears, Husband continued to take many trips with his girlfriend, spent more than $50,000 to furnish his apartment, and repaid debts to family members and friends. Husband has failed to demonstrate an abuse of discretion by the trial court.

**{¶25}** Husband further contends that the amount of spousal support awarded was an abuse of discretion because the business entities have no value, his income has dramatically declined, and "there are no other sources from which to borrow the funds to meet the Trial Court's Order." The record indicates that in response to his decline in income, the trial court reduced Husband's monthly obligation for spousal support from $9,833 to $6,000. Although Husband broadly argues that the award is unfair, he does not support his arguments with case law. "Disagreeing with the trial court's conclusions, without a showing of the unreasonableness, arbitrariness, or unconscionability of the trial court's actions, is insufficient to demonstrate an abuse of discretion." *Fisher v. Fisher* (Mar. 22, 2002), 3d Dist. No. 7-01-12, at *8. The record reflects that the trial court considered the factors in R.C. 3105.18(C)(1). The trial court discussed its findings and its rationale over the course of five pages in the judgment entry. The record does not indicate that the trial court acted unreasonably, arbitrarily, or unconscionably or in a manner that would demonstrate something more than a mere error of law or judgment. *Blakemore*, 5 Ohio St.3d at 219.

**{¶26}** Husband's second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

"THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY ORDERING [HUSBAND] TO MAINTAIN A LIFE INSURANCE POLICY TO SECURE HIS SPOUSAL SUPPORT OBLIGATION."

{¶27} In his third assignment of error, Husband contends that the trial court erred by ordering him to maintain a life insurance policy to secure his spousal support obligation. We do not agree.

{¶28} This court has consistently held that a trial court errs in ordering an obligor to secure a spousal support obligation terminable upon death with life insurance. *Schiesswohl v. Schiesswohl*, 9th Dist. No. 21629, 2004-Ohio-1615, at ¶5; *Moore v. Moore* (1997), 120 Ohio App.3d 488, 492; *Sergi v. Sergi* (July 31, 1996), 9th Dist. No. 17476, at *11. However, in *Karis v. Karis*, this Court noted a significant limitation. *Karis v. Karis*, 9th Dist. No. 23804, 2007-Ohio-759, at ¶18. There, this Court held that the trial court did not abuse its discretion by ordering the husband to secure his arrearage of spousal support payments with a life insurance policy. Id. Here, Husband stipulated that he had support arrears of $47,279.94. As in *Karis*, "this obligation reflects an amount due to Wife as a result of Husband's contempt rather than his ongoing spousal support obligation[.]" *Karis* at ¶18. Accordingly, the trial court did not abuse its discretion by ordering Husband to secure payment of the arrearage with a life insurance policy.

{¶29} Husband's third assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

"THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN ITS CALCULATION OF CHILD SUPPORT."

{¶30} In his fourth assignment of error, Husband contends that the trial court erred in its calculation of child support. We agree in part.

**{¶31}** "We review matters involving child support under the abuse-of-discretion standard." *DeJesus v. DeJesus*, 170 Ohio App.3d 307, 2007-Ohio-678, at ¶7, citing *Booth v. Booth* (1989), 44 Ohio St.3d 142, 144. "An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling." *DeJesus* at ¶7, citing *Blakemore*, 5 Ohio St.3d at 219. "When applying the abuse-of-discretion standard, this court may not substitute its judgment for that of the trial court." *DeJesus* at ¶17, citing *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621.

**{¶32}** Husband argues that the trial court erred in its determination of his gross income. Based on our disposition of the first assignment of error, this argument is without merit. Husband further contends that the trial court erred when it averaged his income. In appropriate circumstances, trial courts are permitted to average income over a reasonable period of years. R.C. 3119.05(H). The decision to do so lies within the trial court's discretion and will not be reversed absent abuse of discretion. *Johnson v. Huddle*, 4th Dist. No. 03CA19, 2004-Ohio-410, at ¶12.

**{¶33}** Husband cites *Johnson* for the proposition that income averaging is not appropriate when the obligor's income "dropped precipitously." That court, however, found that income averaging was inappropriate when the "income did not fluctuate within [the husband's] job, but, instead, dropped precipitously due to [a] job loss and would not rise again until he located a new job." *Banchefsky v. Banchefsky*, 10th Dist. No. 09AP-1011, 2010-Ohio-4267, at ¶20, citing *Johnson* at ¶13-14. Furthermore, the *Johnson* court noted that it has previously held that "income averaging is typically used in those situations in which an obligor's income is unpredictable or fluctuates within his or her profession." *Johnson* at ¶13, citing *McGuire v. Mcguire* (Mar. 8, 2002), 4th Dist. No. 01CA2789. Husband's situation is akin to *McGuire* in

that his income is unpredictable and fluctuates within his job. This Court has previously found it appropriate to average income where earnings are "unpredictable or inconsistent." *Towne v. Towne* (Nov. 27, 1996), 9th Dist. No. 17772, at *4, citing *Titus v. Titus* (Apr. 12, 1995), 9th Dist. No. 94CA005971. Accordingly, it was appropriate for the trial court to average Husband's income in determining his child support obligation.

{¶34} In reviewing the divorce decree, we note that the trial court ordered Husband to pay $1,041.33 per child, as opposed to the total monthly obligation of $1,041.33 from the Child Support Computation Worksheet. Although Wife's brief references a nunc pro tunc entry correcting this error, the appeal for this case had already been filed. The trial court was without jurisdiction to make such a correction without the parties seeking the leave of this Court. Thus, we vacate that portion of the divorce decree and remand to the trial court to correct the divorce decree to properly reflect a monthly child support obligation of $1,041.33. The remaining portions of Husband's assignment of error are overruled.

### III.

{¶35} Husband's first, second, and third assignments of error are overruled. His fourth assignment of error is sustained in part, and overruled in part. The judgment of the Summit County Court of Common Pleas, Domestic Relations Division, is affirmed in part, and vacated in part, and the cause remanded for further proceedings consistent with this decision.

Judgment affirmed in part,
vacated in part,
and cause remanded.

There were reasonable grounds for this appeal.

13

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to both parties equally.

CARLA MOORE
FOR THE COURT

WHITMORE, J.
BELFANCE, P. J.
CONCUR

APPEARANCES:

VINCENT A. STAFFORD, and ANNE F. COAN, Attorneys at Law, for Appellant.

DREAMA ANDERSON, Attorney at Law, for Appellee.