[Cite as *Smith v. Smith*, 2012-Ohio-1716.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| CRAIG SMITH | | C.A. No.  26013 |
|---|---|---|
| Appellant | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| JANE C. SMITH | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellee | | CASE No.  DR 2008-07-2178 |

DECISION AND JOURNAL ENTRY

Dated: April 18, 2012

---

BELFANCE, Judge.

**{¶1}** Craig Smith appeals the decree of divorce. For the reasons set forth below, we affirm.

I.

**{¶2}** Craig and Jane Smith married in 1968. In July 2008, Mrs. Smith returned from vacation to find a note from Mr. Smith in a cabinet. The note informed her that he had moved to Oregon. Mr. Smith filed for divorce on July 22, 2008.

**{¶3}** During the seven months preceding his filing for divorce, Mr. Smith liquidated $458,410 in marital assets consisting of various accounts as well as the parties' interest in an apartment complex that Mr. Smith had managed during the marriage. During this period leading up to his filing for divorce, he used the funds to pay parts of their children's college loans and upcoming tuition and expenses. He also paid off his car, paid taxes on the property he had sold, gave money to his divorce attorney and used $1,000 to pay for his move to Oregon.

{¶4} The trial court determined that Mr. Smith committed financial misconduct because he intentionally deprived Mrs. Smith of the parties' marital assets. Mrs. Smith was awarded $199,934 representing almost one-half of the sum dissipated. Mr. Smith was also required to maintain life insurance sufficient to cover the award until paid. The trial court also awarded Mrs. Smith $3,500 per month in spousal support, payable until the death of either party or Mrs. Smith's remarriage.

{¶5} Mr. Smith appealed, but this Court dismissed his appeal for lack of a final, appealable order because the divorce decree did not dispose of the Smiths' 2008 tax refund. *Smith v. Smith*, 9th Dist. No. 24993, 2011-Ohio-2506, ¶ 1. The trial court issued an entry dividing the refund evenly between the Smiths, and Mr. Smith again appealed. *See id*. This Court again dismissed the appeal because the divorce decree did not divide all of the marital property, particularly the loans related to the Smiths' children's educations. *Id*. at ¶ 1, 6-8. On remand, the trial court issued an entry, which clarified that Mr. Smith was responsible for $165,000 in student loans taken out for two of the parties' sons.

{¶6} Mr. Smith has again appealed, raising four assignments of error for our review.

## II.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN ITS DIVISION OF PROPERTY IN THAT IT DID NOT EQUITABLY AND EQUALLY DIVIDE DEBT WHICH THE PARTIES ACCRUED DURING THE MARRIAGE FOR VALID MARITAL PURPOSES.

{¶7} Mr. Smith argues in his first assignment of error that the trial court erred when it made him responsible for the balance of the student loans. We disagree.

{¶8} R.C 3105.171(C)(1) requires trial courts to divide marital property equally, except to the extent that an equal division would be inequitable. Although the allocation of debt is not

specifically addressed in the statute, the division of property also includes marital debt. *Hines v. Hines-Ramsier*, 9th Dist. No. 10CA0059, 2011-Ohio-6093, ¶ 5. *See also Easterling v. Easterling*, 2nd Dist. No. 18523, 2001 WL 369734, *5 (Apr. 13, 2001). Thus, although equal division may be a starting point for the division of debt, a trial court may divide debt unequally if an equal division would be inequitable. A trial court's division of marital debt is reviewed for an abuse of discretion. *Miller v. Miller*, 9th Dist. No. 07CA0061, 2008-Ohio-4297, ¶ 74. An abuse of discretion implies that the court's decision is arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶9} In this case, the trial court did not equally divide two student loans in the amount of $165,000 that Mr. Smith incurred during marriage for the parties' two sons. Instead, the trial court allocated the debt to Mr. Smith. The trial court's factual findings include its determination that Mr. Smith had demonstrated an ability to earn over $100,000 per year, Mrs. Smith had "virtually no earning ability[,]" that she had lost income capacity due to her homemaker responsibilities and that she was in poor physical, mental and emotional health. It further found that Mr. Smith controlled the parties' finances and that Mrs. Smith "did not co-sign for [the student] loans and did not agree to them." The court also found that there were "minimal retirement benefits as a result of [Mr. Smith's] dissipation of assets[]" and that "[t]he parties have few assets at this point * * *."

{¶10} Mrs. Smith was awarded the marital home, which was heavily mortgaged. Despite her limited earning capacity, she was required to pay the mortgages on the home and hold Mr. Smith harmless on the indebtedness. We note that Mr. Smith has not challenged any of the trial court's findings. Instead, he contends that the trial court "did not equitably and equally divide" the student loan debt. However, a division need not be equal to be equitable. *See Cherry*

*v. Cherry*, 66 Ohio St.2d 348, 355 (1981). While the trial court did not divide the marital property equally, we cannot say that the trial court did not divide it equitably.

{¶11} Mr. Smith also argues that the trial court erred in finding that the loans were his separate debt. However, the trial court did not make such finding; instead, in its subsequent entry it treated the student loan debt as part of the general division of debt that it allocated to Mr. Smith.

{¶12} The trial court did not abuse its discretion when it did not equally divide the student loan debt. Mr. Smith's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED IN DETERMINING THAT APPELLANT HAD COMMITTED FINANCIAL MISCONDUCT WHERE HE HAD NOT BENEFITTED INDIVIDUALLY FROM ANY ACTION, WHERE HE USED MARITAL ASSETS TO PAY MARITAL DEBTS, AND HE DID NOT CHANGE THE ULTIMATE SUM OF MARITAL PROPERTY TO DIVIDE.

{¶13} In Mr. Smith's second assignment of error, he challenges the trial court's determination that he committed financial misconduct.

{¶14} Pursuant to R.C. 3105.171(E)(4), if a spouse has engaged in financial misconduct, which includes, but is not limited to, "dissipation, destruction, concealment, nondisclosure, or fraudulent disposition of assets," the trial court may compensate the other spouse with a distributive award or a greater award of marital property. "'Distributive award' means any payment or payments, in real or personal property, that are payable in a lump sum or over time, in fixed amounts, that are made from separate property or income, and that are not made from marital property and do not constitute payments of spousal support * * *." R.C. 3105.171(A)(1).

{¶15} This Court reviews a trial court's finding of financial misconduct under a manifest weight standard. *Bucalo v. Bucalo*, 9th Dist. No. 05CA0011-M, 2005-Ohio-6319, ¶ 22. The

trial court's finding will not be disturbed if supported by competent, credible evidence. *See C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279 (1978), syllabus.[1]  *But see Downey v. Downey*, 9th Dist. No. 23687, 2007-Ohio-6294, ¶ 17 (concluding that "the trial court did not abuse its discretion in finding that Husband had engaged in financial misconduct in his use of the proceeds of the home equity loan[]").

{¶16}  The trial court found that Mr. Smith had "engaged in a course of conduct cold-bloodily calculated to strip [Mrs. Smith] of financial assets and then to abandon her and move across the country to Oregon."  There was testimony that at least by 2007 Mr. Smith had decided that he was going to obtain a divorce.  He indicated that he was planning to divorce Mrs. Smith once the youngest daughter left for college and had consulted a divorce attorney in April of 2007.  After the youngest child went to college, Mr. Smith learned he was allergic to cats in December 2007, which he stated prompted him to firmly decide to leave.  Prior to filing for divorce, Mr. Smith, knowing that he would be leaving, decided with his partners that the entire apartment complex property should be sold.  In 2008, he proceeded to liquidate marital assets and at trial agreed that the total amount he received was $458,410, which included the sale of the apartment complex, the money withdrawn from the parties' IRAs, and the funds received from cashing out most of the life insurance policies.  In the spring of 2008, Mr. Smith spoke to his sister in Oregon and arranged to live in her home.  In April and May 2008, he also began telling his clients that he would be moving to Oregon.  There was also evidence that, in the years prior

---

[1]In *Bucalo*, this Court applied the criminal manifest weight standard.  *Bucalo* at ¶ 22.  However, it was decided prior to *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, in which the Supreme Court of Ohio clarified that civil and criminal judgments are reviewed under different manifest weight of the evidence standards.  *See Wilson* at ¶ 21-26.

to filing for divorce, Mr. Smith began to keep records in his car which he locked, placed a lock on his home office, and forwarded his mail to his office.

{¶17} As noted above, with the liquidated assets, Mr. Smith proceeded to pay various debts without Mrs. Smith's knowledge or consent. In addition to pre-paying different expenses, Mr. Smith paid at least $69,000 in tuition and living expenses associated with the parties' adult children's education, $30,000 of which he gave directly to one of the sons because the college would not accept a tuition payment that far in advance. Mr. Smith also incurred significant tax liability. Instead of paying tax owed through the sale of the apartment building with the proceeds of sale, he used the funds and then withdrew money from the parties' IRA to pay the taxes, an act that incurred more taxes.

{¶18} Mr. Smith received the proceeds of the sale of the apartment complex in early July 2008. On July 12, 2008, he left the marital home by leaving a note to Mrs. Smith and moved to Oregon. Mr. Smith then dissipated additional assets and filed for divorce. In total, Mr. Smith withdrew and dissipated $274,296.48 in July alone.

{¶19} Mr. Smith has not challenged the majority of trial court's factual findings as being against the manifest weight of the evidence, although he has challenged the trial court's finding that he "handled funds of $458,410 in 2008." The trial court arrived at the $458,410 total by adding the amounts Mr. Smith withdrew from his IRAs, the money he received from cashing in his life insurance policies, and the money received from the sale of the apartment building. Mr. Smith does not dispute any of these figures overall. Instead, he argues that this ignores the fact that he did have tax liabilities resulting from the distribution of these funds and, therefore, did not actually have access to all of those funds. However, all of the tax liabilities resulted from Mr. Smith's dissipation of the assets without Mrs. Smith's knowledge. Accordingly, Mr. Smith

has failed to demonstrate how the trial court's finding that he had dissipated funds in the amount of $458,410 in 2008 was not supported by competent, credible evidence.

{¶20} Mr. Smith has mainly argued that, given the facts, the trial court improperly concluded that he had any intent to defeat Mrs. Smith's interest in the marital assets. However, keeping in mind that the trial court necessarily assessed the credibility of the witnesses in reaching its determination, there was competent, credible evidence from which the trial court could conclude that Mr. Smith acted with intent to deprive Mrs. Smith of her interest in the marital assets. Although Mr. Smith denied that he had any improper intent, the trial court could have concluded otherwise in light of the evidence. *See, e.g., Downey*, 2007-Ohio-6294, at ¶ 17 ("Because financial misconduct involves some element of profit or interference with another's property rights, the time frame in which the alleged misconduct occurs may often demonstrate wrongful scienter.") (Internal quotations and citation omitted.); *see also id.* (compiling cases in which the timing of the dissipation of the assets supported a finding of financial misconduct).

{¶21} Mr. Smith further suggests that the trial court erred in finding that he engaged in financial misconduct where the evidence demonstrated that he did not use the funds for his personal benefit. However, this argument ignores the fact that Mr. Smith would obtain a benefit by eliminating debt that might have been otherwise allocated to him upon divorce. Mr. Smith made critical and unilateral decisions concerning the parties' retirement funds and other assets in anticipation of his divorce. Had Mr. Smith refrained from liquidating the assets, or refrained from spending the funds once assets were liquidated, it is conceivable that the trial court would have ordered an equal division of the assets and at the same time required Mr. Smith to pay the majority of the marital debt, including the student loans. Even if the trial court believed that the parties had agreed early in their marriage to pay for their children's college, the trial court could

have determined that, in the face of divorce and limited assets, it would not order the parties to use their assets to pay the college tuition and living expenses of their children. Mr. Smith's conduct effectively eliminated that possibility. Thus, the fact that Mr. Smith did not actually spend the funds on himself does not necessarily foreclose a determination that he engaged in financial misconduct. *See, e.g., Downey*, 2007-Ohio-6294, at ¶ 12, 15-22.

**{¶22}** His second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED IN SECURING ITS JUDGMENT AGAINST APPELLANT WITH LIFE INSURANCE IN AN AMOUNT SEVERAL TIMES THE JUDGMENT WHEN THE COST OF THE INSURANCE IS PROHIBITIVE.

**{¶23}** Mr. Smith argues that the trial court erred in ordering that he secure the $199,000 financial misconduct award with a $650,000 life insurance policy. He does not dispute that the trial court could order him to maintain a life insurance policy to secure the award. *See Sergi v. Sergi*, 9th Dist. No. 17476, 1996 WL 425914, *11 (July 31, 1996), citing *McCoy v. McCoy*, 91 Ohio App.3d 570, 582 (8th Dist.1993). Instead, he argues that the trial court abused its discretion when it required him to maintain a life insurance policy far in excess of the judgment that it was securing.

**{¶24}** In the decree of divorce, the trial court ordered that "[Mr. Smith] shall maintain his present life insurance policy on his life, naming [Mrs. Smith] as an irrevocable beneficiary in an amount sufficient to satisfy his obligation of the property settlement until property settlement has been paid in full." The trial court's clear intention is for Mr. Smith to secure the full amount of the distributive award with his life insurance. While Mr. Smith suggests that the divorce decree could be interpreted as requiring him to maintain his current policy at $650,000, the manifest intent of the trial court was to ensure Mrs. Smith's receipt of the full amount of the

distributive award. Given the express language contained in the decree, it does not require Mr. Smith to maintain the life insurance policy with a $650,000 death benefit; rather, it requires Mr. Smith to maintain the policy at a benefit level that would be sufficient to satisfy his obligation to Mrs. Smith.

{¶25} Mr. Smith's third assignment of error is overruled.

ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED IN AWARDING MORE SPOUSAL SUPPORT TO APPELLEE THAN APPELLANT CAN PAY FROM HIS ACTUAL INCOME AND TO FIND (sic) THAT APPELLEE IS INCAPABLE OF EARNING INCOME.

{¶26} In Mr. Smith's fourth assignment of error, he argues that the trial court erred when it ordered him to pay $3,500 in spousal support. We disagree.

{¶27} This Court reviews an award of spousal support for an abuse of discretion. *Brubaker v. Brubaker*, 9th Dist. No. 22821, 2006-Ohio-1035, ¶ 7, citing *Pauly v. Pauly*, 80 Ohio St.3d 386, 390 (1997). An abuse of discretion implies that the trial court's decision is arbitrary, unreasonable, or unconscionable. *Blakemore*, 5 Ohio St.3d at 219.

> In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:
>
> (a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;
>
> (b) The relative earning abilities of the parties;
>
> (c) The ages and the physical, mental, and emotional conditions of the parties;
>
> (d) The retirement benefits of the parties;
>
> (e) The duration of the marriage;

(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;

(g) The standard of living of the parties established during the marriage;

(h) The relative extent of education of the parties;

(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;

(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

(l) The tax consequences, for each party, of an award of spousal support;

(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

(n) Any other factor that the court expressly finds to be relevant and equitable.

R.C. 3105.18(C)(1).

{¶28} In determining whether spousal support was appropriate and reasonable, it is apparent that the trial court considered the factors contained in R.C. 3105.18(C)(1). With respect to the parties' income, the trial court determined that Mr. Smith earned a net income of $142,842, $147,635, and $112,116 in 2006, 2007, and 2008 respectively while Mrs. Smith had had no earnings at all. Mr. Smith testified that, due to the existing market, his income had significantly dropped. The trial court appears to have declined to place as much weight upon Mr. Smith's representations that his income was continuing to decrease radically, relying instead upon actual income figures reflected in the parties' tax returns. With respect to the parties' relative earning ability, and the parties' health, the trial court determined that Mr. Smith, was 64

years old, was in good health and had the ability to earn in excess of $100,000 annually while Mrs. Smith, who was also 64, had virtually no earning ability and was in poor physical and emotional health and "suffers from a number of health problems which limit her ability to work." The court found that Mr. Smith had a Bachelor's degree in Geology and Mrs. Smith had a college degree in Home Economics. It also found that the parties had been married for 41 years and that Mrs. Smith had foregone a career due to her responsibilities as a homemaker. The court found that the parties' standard of living had been comfortable but could not be sustained, and that they had minimal retirement benefits as a result of Mr. Smith's dissipation of assets. The court also considered the tax consequences relative to an award of spousal support and the parties' monthly expenses, finding Mr. Smith had listed $6,495 in expenses and Mrs. Smith had listed $8,663. At trial, Mrs. Smith submitted an exhibit that indicated that her fixed monthly housing expenses are $3,336, a total that did not include food, auto expenses, telephone service, homeowner's insurance and other expenses. The trial court determined that Mr. Smith had averaged $134,197.66 in income the previous three years. After subtracting expenses of $1,000 per month to pay for the student loans and $991 per month for his life insurance, it ordered Mr. Smith to pay $3,500 per month in spousal support.

{¶29} Mr. Smith argues that the trial court abused its discretion because it was inequitable to require him to pay an obligation he was incapable of paying. The underlying premise of this argument is that the trial court should have accorded greater weight to his testimony and another member of his company concerning his prospective earnings for the coming year and less weight to his actual earning history. Keeping in mind that the trial court could have found the testimony to lack credibility and could have viewed it as self-serving, Mr. Smith also acknowledged that his commissions were seasonal and that the months he

traditionally made more sales were upcoming. Additionally, both Mr. Smith and the witness from his company blamed the poor economy for Mr. Smith's decline in wages, suggesting that Mr. Smith's salary could increase as the economy recovered. *See Gore v. Gore*, 2nd Dist. No. 09-CA-64, 2010-Ohio-3906, ¶ 22. This Court has previously recognized the difficulty of establishing reasonable spousal support when a party's income is based on commissions. *See, e.g., Krone v. Krone*, 9th Dist. No. 25450, 2011-Ohio-3196, ¶ 18-19 (finding that averaging income under circumstances of dramatic decline in real estate market is appropriate). We note that the trial court retained jurisdiction to modify the amount of support. To the extent Mr. Smith believes that he is entitled to a reduction in the monthly amount of support, he is able to take advantage of the trial court's continuing jurisdiction to seek modification of the spousal support amount.

{¶30} Upon review of the record, we cannot say that the trial court abused its discretion when it ordered Mr. Smith to pay $3,500 per month in spousal support. His fourth assignment of error is overruled.

III.

{¶31} Mr. Smith's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Domestic Relations Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
EVE V. BELFANCE
FOR THE COURT

WHITMORE, J.
MOORE, J.
CONCUR.

APPEARANCES:

LESLIE S. GRASKE, Attorney at Law, for Appellant.

RANDAL A. LOWRY and KENNETH L. GIBSON, Attorneys at Law, for Appellee.