[Cite as *Matheson v. Matheson*, 2023-Ohio-1709.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

MARIA MATHESON

    Appellant

    v.

JAMES MATHESON

    Appellee

C.A. No.    22CA011881

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    19DU086106

DECISION AND JOURNAL ENTRY

Dated: May 22, 2023

SUTTON, Presiding Judge.

{¶1}    Plaintiff-Appellant, Maria Matheson, appeals the judgment of the Lorain County Court of Common Pleas, Domestic Relations Division. For the reasons that follow, this Court affirms, in part, and reverses, in part.

I.

**Relevant Background**

{¶2}    Dr. and Mrs. Matheson were married on September 2, 1989, and nine children were born as issue of the parties' marriage. Mrs. Matheson filed a complaint for divorce on May 16, 2019, and Dr. Matheson filed a counterclaim. At that time, there were two remaining minor children. During the 14 day trial, the trial court addressed: (1) the division of separate and marital property; (2) the division of Dr. Matheson's retirement/pension and investment accounts; (3) the division of marital debt; (4) the division of proceeds from the sale of the marital home; (5) spousal support; (6) allocation of child tax credit; (7) allocation of Guardian ad Litem fees; (8) Mrs.

Matheson's request of attorney fees; and (9) whether temporary spousal support issued on January 28, 2022, should be made retroactive. The parties reached mutual agreements on: (1) the allocation of parental rights and responsibilities regarding the two minor children; (2) the sale of commercial real estate and 50/50 split of the proceeds of the sale; and (3) the 50/50 division of the $3,461.00 refund from the 2020 tax return. The parties also stipulated the amount due in Guardian ad Litem fees.

{¶3} On June 22, 2022, the trial court granted the parties' divorce and issued findings of fact and conclusions of law in a 99-page judgment entry.

{¶4} Mrs. Matheson now appeals raising three assignments of error for our review.

## II.

### <u>ASSIGNMENT OF ERROR I</u>

**THE TRIAL COURT ERRED IN CALCULATING THE ASSET AND DEBT ALLOCATION AND FAILING TO AWARD A DISTRIBUTIVE AWARD TO WIFE.**

{¶5} In her first assignment of error, Mrs. Matheson argues the trial court erred in calculating and allocating the parties' marital property, including marital debt, and in failing to order a distributive award based upon Dr. Matheson's alleged financial misconduct.

{¶6} R.C. 3105.171 (B) states:

> In divorce proceedings, the court shall * * * determine what constitutes marital property and what constitutes separate property. In either case, upon making such a determination, the court shall divide the marital and separate property equitably between the spouses, in accordance with this section. For purposes of this section, the court has jurisdiction over all property, excluding the social security benefits of a spouse other than as set forth in division (F)(9) of this section, in which one or both spouses have an interest.

"Although the allocation of debt is not specifically addressed by the statute, the division of property also includes marital debt." *Yousef v. Iskander*, 9th Dist. Summit No. 29703, 2021-Ohio-3322, ¶

6, citing *Mullen v. Mullen*, 9th Dist. Summit No. 28083, 2017-Ohio-77, ¶ 11, citing *Smith v. Smith*, 9th Dist. Summit No. 26013, 2012-Ohio-1716, ¶ 8. "If the trial court finds sufficient evidence supports the existence of the alleged debts, it must classify such debts as marital or separate in nature, determine the amount of the debts, and consider the debts in dividing the marital and separate property equitably between the spouses pursuant to R.C. 3105.171." *Habtemariam v. Worku*, 10th Dist. Franklin No. 19AP-47, 2020-Ohio-3044, ¶ 58.

{¶7} In the Judgment Entry, the trial court stated:

During the marriage, the parties were in substantial debt. Prior to the filing of the divorce in May 2019, and according to documents presented at trial, the parties' loan debt was less than $100,000.00, which consisted of two Best Egg loans and one Lightstream loan. Dr. Matheson testified that he obtained two loans in late 2019, one from Northwest Bank in the amount of $155,000.00, and one from Sofi in the amount of $88,000.00. According to Dr. Matheson, those loans paid off other outstanding loans, credit card balances, federal tax debt, and was used to fund Dr. Matheson's pension; although, no documents or evidence was presented to corroborate his testimony.

During the contested divorce trial, Dr. Matheson continued to pay off debt by obtaining loans and using the loan proceeds to reduce said debt. He was in a sense, "borrowing from Peter to pay Paul." Specifically, Dr. Matheson obtained six new loans from various lenders after this action was filed which added to the parties['] existing debt and complicated the case as it pertained to the issue of dividing the marital debts.

Dr. Matheson continued to obtain loans without the [c]ourt or Mrs. Matheson's permission. While Dr. Matheson argues that these loans were used to pay marital debt, based upon his testimony and evidence, there remains tens of thousands of unaccounted funds. It appears that Dr. Matheson obtained loan proceeds in amounts that were more than necessary to pay off old debts[,] which created a windfall for Dr. Matheson.

Dr. Matheson offered exhibits "E" and "F" as proof of what he did with the proceeds from some of the loans he obtained during this litigation, however, the court notes that this proof is merely his written recollection of what he did with the proceeds without corroborating documents from any of the lending institutions or creditors who were allegedly paid off with the loan proceeds. Further, there were inconsistencies with Dr. Matheson's proof offered concerning his use of the loan proceeds. For example, Dr. Matheson testified he used proceeds from the Sofi loan of $89,000 in December 2019, to pay the existing loan to Lightstream; however, he

later testified that he used the proceeds from the BHG loan of $277,000 in March 2021 to pay off the loan to Lightstream. Also, Dr. Matheson only accounted paying expenses in the amount of $180,000 from the BHG loan of $277,000, leaving him with an unaccounted windfall.

In reviewing the documents presented during trial, the [c]ourt *surmises* that the marital debt of the parties in the Fall of 2019, was *approximately $200,000.00*, which included *outstanding loans (other than mortgages), pre-existing credit card debt and tax debt.* Therefore, the [c]ourt orders $200,000.00, be paid on existing outstanding loans owed by Dr. Matheson which represents $100,000.00, from each party to pay marital debt incurred prior to December of 2019. The [c]ourt further finds that Dr. Matheson's custom of obtaining compounding debt while the case was pending (including obtaining loans during the trial) should be to his detriment and his sole responsibility. As such, Dr. Matheson will be solely responsible for the remaining outstanding BHG, Best Egg, and Lightstream loans after the proceeds from the escrow account are applied to pay the outstanding debt pursuant to this order.

\*\*\*

(7) the existing loan debt shall be paid by both parties from the proceeds in escrow from the sale of the marital home in the amount of [$200,000.00], which represents $100,000.00 from each party to pay marital debt.

\*\*\*

(Emphasis added.)

{¶8} Here, although the trial court addressed whether some of the Matheson's debts are marital or separate, the trial court did not specify the exact amount of marital debt or indicate which marital debt Dr. Matheson must pay with the $200,000.00 in equity from the sale of the Matheson's marital home. Instead, the trial court approximated there is $200,000.00 in marital debt and indicated the debt included "outstanding loans (other than mortgages), pre-existing credit card debt and tax debt." Additionally, the trial court stated two different loan amounts when referencing Dr. Matheson's testimony regarding the Sofi loan, without resolving which amount is correct. As this Court explained in *Zona v. Zona*, 9th Dist. Medina No. 05CA0007-M, 2005-Ohio-5194, ¶ 6, "[i]f the trial court was not satisfied with either party's [] evidence [relating to marital debt], it should

have required them to submit additional evidence[,]" instead of approximating the amount of marital debt to be paid.

{¶9} Accordingly, Mrs. Matheson's first assignment of error is sustained to the extent the trial court failed to: (1) calculate the specific amount of marital debt, and (2) state which marital debt must be paid with $200,000.00 in equity from the sale of the parties' marital home. Because the parties' marital property has not yet been fully calculated and allocated by the trial court, this Court declines to consider the merits of Mrs. Matheson's argument regarding a distributive award at this time.

## ASSIGNMENT OF ERROR II

**THE TRIAL COURT ERRED IN CALCULATING THE AMOUNT AND DURATION OF SPOUSAL SUPPORT.**

{¶10} In her second assignment of error, Mrs. Matheson argues the trial court erred in calculating the amount and duration of spousal support.

{¶11} "Prior to considering appropriate and reasonable spousal support, a trial court must determine what constitutes marital property or separate property and then divide the marital property equitably between the spouses." *Yousef* at ¶ 11, quoting R.C. 3105.18(B); R.C. 3105.171. Because our resolution of the first assignment of error necessitates the trial court revisit its determination and division of marital property, consideration of the second assignment of error is rendered premature.

## ASSIGNMENT OF ERROR III

**THE TRIAL COURT DENIED [MRS. MATHESON] A FAIR TRIAL AND DUE PROCESS RIGHTS BY PROHIBITING HER FROM PRESENTING CRITICAL WITNESSES[.]**

{¶12} In her third assignment of error, Mrs. Matheson argues all of her witnesses, including an expert vocational witness, were precluded from testifying regarding her "need for

spousal support, her duties in the home, and ability to regain income." Mrs. Matheson contends the trial court should have imposed a less severe sanction for Mrs. Matheson's discovery abuses by allowing the witnesses to testify at the end of trial, which was divided between 8 days in November 2021, and 6 days in March 2022. We, however, are not persuaded by Mrs. Matheson's arguments.

{¶13} The purpose of the discovery rules "is to prevent surprise to either party at the trial or to avoid hampering either party in preparing its claim or defense for trial." *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 86 (1985), quoting *Jones v. Murphy*, 12 Ohio St.3d 84, 87 (1984) (Brown, J., dissenting). "This is accomplished by way of a discovery procedure which mandates a free flow of accessible information between the parties upon request, and which imposes sanctions for failure to timely respond to reasonable inquiries." *Jones* at 86. "The discovery rules give the trial court great latitude in crafting sanctions to fit discovery abuses." *Nakoff v. Fairview Gen. Hosp.*, 75 Ohio St.3d 254, 256 (1996). Thus, "[a] reviewing court's responsibility is merely to review these rulings for an abuse of discretion." *Id.* An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶14} In the present matter, prior to the start of trial, the court addressed both parties regarding the filing of witness and exhibit lists. Regarding Mrs. Matheson's witness and exhibit lists, the trial court stated:

\* \* \*

> [Y]ou have filed your first witness list October [28], 2021, approximately less than two weeks before trial; your exhibit list, November [4], 2021, less than a week before trial; as well as a supplemental exhibit list, November [4], 2021, less than a week before trial.

\* \* \*

The [c]ourt finds it troubling, as I have stated, that this matter was pending two and a half years, and [you] [have] been [Mrs. Matheson's] counsel for two years now; that the matter has been scheduled for trial three times, that there have been orders, court orders ordering counsels to file witness and exhibit lists at various hearings, including settlement conferences and before final pretrials, before the first trial that was scheduled.  And not only were those timelines not complied with, but we have rescheduled this trial a second and a third time, and witnesses and exhibits are not timely identified [] less than two weeks before trial and less than a week before trial for an exhibit list by [Mrs. Matheson].

The purpose of the discovery rules and this court's orders as to identifying witness and exhibits and exchanging those is to avoid hampering either side the ability to prepare its claim or its defense system at a trial.  Both parties are entitled, upon the unveiling of a contention[,] to a reasonable opportunity to prepare to defend against a claim.

I am concerned about the late filing of witness and exhibit lists to the extent that they prejudice the other side from appropriately preparing a defense and preparing for trial.

\* \* \*

The trial court then went through each witness on Mrs. Matheson's October 28, 2021 witness list. Mrs. Matheson's counsel indicated he wished to call Elizabeth Matheson, one of the parties' adult children, even though she did not appear on Mrs. Matheson's witness list.  Mrs. Matheson's counsel also indicated he wished to call Emma Matheson, another adult child, whose name appeared on the October 28, 2021 witness list.  The trial court excluded both witnesses and Mrs. Matheson's counsel did not object.  Mrs. Matheson's counsel then indicated he intended to call Mrs. Matheson's prior attorney, Michael Tony, as well as attorney Anthony Pecora, to testify regarding the reasonableness of Mrs. Matheson's legal fees.  The trial court excluded both witnesses and Mrs. Matheson's counsel did not object.  Mrs. Matheson's attorney withdrew his requests to call the next four witnesses on Mrs. Matheson's witness list, including the parties' CPA.  The trial court next addressed Mrs. Matheson's vocational expert, David Francati, and excluded him due to late identification.  Mrs. Matheson's attorney objected to the exclusion of Mr.

Francati. Further, the trial court excluded Ann Faze, a family friend, without objection. Mrs. Matheson's attorney withdrew his request to call Sharon Cecil. Additionally, the trial court excluded Dr. Kelly Karavokiros, a family friend, over the objection of Mrs. Matheson's counsel. As such, Mrs. Matheson only objected to two witnesses excluded by the trial court, both relating to the issue of spousal support.

{¶15} Based upon this record, we cannot say the trial court abused its discretion in excluding Mr. Francati and Dr. Karavokiros, as witnesses, due to Mrs. Matheson's discovery abuses. Indeed, Mrs. Matheson had numerous opportunities to comply with the trial court's discovery orders and blatantly failed to do so over the course of several years, only to finally file her first witness list less than two weeks prior to trial. Additionally, the parties stipulated Mrs. Matheson was a stay-at-home mom during the entire marriage, she did not work outside the home, earn any income, and Dr. Matheson was the sole wage earner. Due to the nature of this stipulation, the testimony of a vocational expert and family friend regarding Mrs. Matheson's need for spousal support, duties in the home, and ability to regain income was not necessary to aid the trier of fact in this instance.

{¶16} Accordingly, Mrs. Matheson's third assignment of error is overruled.

III.

{¶17} For the reasons stated above, Mrs. Matheson's first assignment is sustained, her second assignment of error is premature, and her third assignment of error is overruled. The judgment of the Lorain County Court of Common Pleas, Domestic Relations Division is affirmed, in part, reversed, in part, and remanded to the trial court for further proceedings consistent with this decision.

Judgment affirmed in part,
reversed in part,

and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

BETTY SUTTON
FOR THE COURT

STEVENSON, J.
FLAGG LANZINGER, J.
CONCUR.

APPEARANCES:

DANIELLE C. KULIK, Attorney at Law, for Appellant.

VINCENT STAFFORD, Attorney at Law, for Appellee.