OPINION
{¶ 1} Jack Carey appeals from the judgment of the Clark County Common Pleas Court wherein the court granted him a divorce from his former spouse, Donna Carey.
 {¶ 2} The facts surrounding this appeal are not in dispute. The Careys were married in April 1976 and their two children are now emancipated. Mr. Carey, who was 47 at the time of the parties' divorce, was employed as a lathe operator at Numerics Unlimited earning $17.35 an hour and $36,088 for a 40 hour week. Mr. Carey typically worked overtime, and in the recent months preceding his divorce Carey worked substantial overtime in order to pay off substantial debts.
 {¶ 3} The trial court found that Mr. Carey had a gross annual income of $77,000 in 1998, $79,000 in 1999, $95,000 in 2000, $88,000 in 2001, and $55,175 as of October 17, 2002. The court extrapolated that Mr. Carey's gross income would be $68,312 for 2002.
 {¶ 4} The court also determined that Mrs. Carey was working 25 hours per week at the Big Bear grocery store earning $8.60 per hour providing her an annual gross income of $11,180. The court determined Mrs. Carey could earn a gross income of $17,888 if she worked full time at her present employment.
 {¶ 5} In the months prior to filing, Mr. Carey allowed the Suburban that he was leasing as well as a recently purchased travel trailer to be repossessed, resulting in deficiency judgments. Carey also stopped making mortgage payments on the marital residence leading to a foreclosure. The parties also had substantial credit card debt. The court allocated the debts as follows.

 ---------------------------------------------------------------------------------------------------------------
 | CREDITOR | DEBT | BALANCE | MONTHLY | RESP. | STATUS AT |
 | | | | PAYMENT | PARTY | TIME OF |
 | | | | | | DECREE |
 |------------------|------------------|--------------------|-------------------|--------------|-----------------|
 | Chase | Mortgage on | $177,429 | $1372.12 | Joint | In Foreclosure |
 | Manhattan | Marital | | | | |
 | Mortgage | Residence | | | | |
 |------------------|------------------|--------------------|-------------------|--------------|-----------------|
 | New Carlisle | VISA | $7779.23 | $542.33 | Joint | Suit Filed |
 | Federal | | | | | |
 |------------------|------------------|--------------------|-------------------|--------------|-----------------|
 | Day Air Credit | VISA | $5810.75 | $517.00 | Joint | |
 | Union | | | | | |
 |------------------|------------------|--------------------|-------------------|--------------|-----------------|
 | First Internet | Travel Trailer | $13,488.31 | $249 p/m | Jack | Reduced to |
 | Bank | Deficiency | | on original loan | | Judgment |
 |------------------|------------------|--------------------|-------------------|--------------|-----------------|
 | Fifth Third | Repossessed | Unknown | Unknown | Jack | Suit Filed |
 | | Aztek | | | | |
 |------------------|------------------|--------------------|-------------------|--------------|-----------------|
 | Liberty Savings | Repossessed | $14,556.74 | | Jack | Reduced to |
 | Bank | Suburban | | | | Judgment |
 |------------------|------------------|--------------------|-------------------|--------------|-----------------|
 | Osterman | Jewelry | $1341.55 | $215 | Jack | Current |
 | Jewelers | | | | | |
 ---------------------------------------------------------------------------------------------------------------
 {¶ 6} In directing Mr. Carey to pay a portion of the parties' marital indebtedness, the trial court made the finding that the payment of the indebtedness was "in the nature of Mrs. Carey's maintenance and support." The court went on to hold that "in the event that Mr. Carey discharges in bankruptcy his obligation to pay his share of this indebtedness which results in Mrs. Carey having to pay more of this indebtedness that was originally assigned her, then this court shall retain jurisdiction with respect to the modification in both amount and duration of spousal support to compensate Mrs. Carey for any increased need in additional spousal support resulting therefrom" (Judgment Entry pg. 16).
 {¶ 7} The court found Mrs. Carey's anticipated monthly expenses to be $1826.39 and Mr. Carey's to be $1562.58. The court ordered Mr. Carey to pay Mrs. Carey spousal support in the amount of $2186 per month, which the court indicated was enough to enable her to meet her basic needs without the necessity for filing for bankruptcy if she meets her employment potential.
 {¶ 8} In his first assignment, Mr. Carey argues that the trial court abused its discretion in imposing upon him a spousal support that exceeded his ability to pay.
 {¶ 9} Mr. Carey argues that the record established that his monthly living expenses are $1982.94, not the figure of $1562.58 arrived at by the trial court's order that he pay $17,056.00 per year toward the parties' marital debts. Additionally, he argues that the trial court's failure to consider his federal, state, and local tax liability results in his annual expenses exceeding his gross income of $68,000 by $14,215.32. Carey argues he would have to work 78.75 hours per week to meet the trial court's order.
 {¶ 10} Mrs. Carey argues that the trial court's finding that Mr. Carey's monthly living expenses totaled $1562.58 was correct because it was reflected on Mr. Carey's trial exhibit and reflects Mr. Carey's own trial testimony of his estimated expenses. She also argues the trial court properly did not consider Mr. Carey's obligation to pay income taxes because he introduced no evidence of that obligation. She also argues that the trial court did not order Mr. Carey to pay an additional $1464.72 per month toward debts to be paid as spousal support. She argues that the trial court simply reserved jurisdiction to reconsider the amount and duration of the spousal support in the event Mr. Carey were to file bankruptcy.
 {¶ 11} In his second assignment, Mr. Carey argues that the trial court abused its discretion in making an award of spousal support that imposes an objectively unreasonable work regimen upon him. Mr. Carey argues the court's order in effect requires him to work 60 hours per week for the next thirteen years in order to meet his spousal support obligation. Mrs. Carey argues that the trial court's order was not unreasonably arbitrary, or unconscionable because the court properly considered the parties' income, expenses and each factor enumerated in R.C. 3105.18.
 {¶ 12} R.C. 3105.18(C)(1) provides that in determining the amount of spousal support, the trial court shall consider the income of the parties from all sources. An award of sustenance alimony or spousal support must not exceed what is reasonable.Kunkle v. Kunkle (1990), 51 Ohio St.3d 64.
 {¶ 13} An award of alimony rests in the sound discretion of the trial court. Some courts have concluded that overtime earnings were properly included in setting an alimony award where the overtime was a regular part of the obligated spouse's employment. Some courts, perhaps in recognition of the variable nature of overtime income, have approved orders awarding a fixed percentage of overtime income. An objection to an order awarding a percentage of overtime pay is that it would require frequent computation of the amount to be paid. Some courts have held that an obligated parent should not be required to work more than a 40 hour week when an adequate support order could be made out of the obligor's base salary. Annotation, Second Job or Overtime Earnings, 17 ALR 5th 143 (1994).
 {¶ 14} In Silver v. Silver (Sept. 24, 1993), Clark App. No. 2985, this court upheld a trial court's reduction of a child support order based on the father's acceptance of a lower paying job. Judge Grady noted the following for this court:
 {¶ 15} "While unemployment is generally understood to be a complete lack of gainful employment, underemployment is more difficult to determine. To do so the court must weigh the historical and job market factors set out in R.C. 2113.215(A)(5), quoted above. If after weighing those factors the court finds that a greater income is available to the parent from an objectively reasonable work regimen, it may find a condition of underemployment. See, Simpson v. Simpson (1992), 4 Cal.2d 583.
 {¶ 16} ". . . .
 {¶ 17} "Scott Silver testified that one of his reasons for quitting that job was the overtime his employer required. The court could, within its discretion, find that the overtime was outside the objectively reasonable work regimen from which Mr. Silver's income should be computed. A recalculation of support `generally should not penalize for his or her efforts a supporting spouse who voluntarily has undertaken an extraordinaryly rigorous work regimen during marriage by locking that spouse into an excessively onerous work schedule.' Id."
 {¶ 18} We believe the better view is that a trial court may consider regular overtime pay in calculating the income of a spouse for purposes of setting child or spousal support. In this matter, Mr. Carey conceded he regularly received overtime pay. He concedes that working 40 or 50 hours a week is not unreasonable in light of his age and health. He contends a 60 hour work week is excessively onerous and we agree. To the extent the trial court based its spousal support order upon a 60 hour work week, it abused its discretion in doing so. We also agree with appellant that the trial court abused its discretion in basing Mr. Carey's spousal support order on his gross income without considering the impact of income taxes upon that income.
 {¶ 19} In his third assignment, Mr. Carey argues that the trial court erred in finding that his payment of certain marital obligations was necessary for appellee's maintenance and support. He argues that the trial court's finding appears to be an attempt to render his obligation upon these debts nondischargeable in bankruptcy in violation of Section 727 of the Bankruptcy Code.
 {¶ 20} Mrs. Carey argues that the trial court did not violate the provisions of the Bankruptcy Code but merely stated that Mr. Carey's obligation to pay his share of the parties' joint obligation was intended to be part of his spousal support obligation. She notes that the trial court retained jurisdiction to modify the spousal support order should Mr. Carey file bankruptcy and renege on his obligation to relieve Mrs. Carey of one-half of these marital obligations.
 {¶ 21} Section 523(A)(5) of the Bankruptcy Code provides:
 {¶ 22} "(a) A discharge under 727 . . . of this title does not discharge an individual debtor from any debt . . . (5) to a spouse, former spouse or child of the debtor, for alimony to, maintenance for, or support of such spouse or child in connection with a separation agreement, divorce, decree or other order of a court of record, determination made in accordance with state or territorial law by a government unit, or property settlement agreement, but not to the extent that . . .
 {¶ 23} "(b) Such that includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance or support."
 {¶ 24} The test for making a determination of whether a debt is in the nature of support and, thus, not dischargeable is set forth in In re Calhoun (C.A. 6, 1983), 715 F.2d 1103,1108-1109, which is the leading case on the issue of dischargeability of debts involving alimony, maintenance and support. The Calhoun court established the following analysis to determine dischargeability issues:
 {¶ 25} "We believe that the initial inquiry must be to ascertain whether the state court or the parties to the divorce intended to create an obligation to provide support through the assumption of joint debts. If they did not, the inquiry ends there. This finding of intent does not, however, control the ultimate issue of whether the assumption of joint debts was actually in the nature of support for purposes of federal bankruptcy. If the bankruptcy court finds, as a threshold matter, that assumption of the debts was intended as support, it must next inquire whether such assumption has the effect of providing the support necessary to insure that the daily needs of the former spouse and any children of the marriage are satisfied. The bankruptcy court should also look at the practical effect of the discharge of each loan upon the defendant spouse's ability to sustain daily needs. If without the loan assumption the spouse could not maintain the daily necessities, such as food, housing and transportation, the effect of loan assumption may be found `in the nature of' support for purposes of the bankruptcy act. If the loan assumption is not found necessary to provide such support, the inquiry ends and the debtor's obligation to hold the former spouse harmless must be discharged.
 {¶ 26} "Having found the loan assumption has the effect of providing necessary support, the bankruptcy court must finally determine that the amount of support represented by the assumption is not so excessive that it is manifestly unreasonable under traditional concepts of support. . . . If at the time the debts were assumed, the assumption substantially exceeded a spouse's present and foreseeable ability to pay, the amount of the assumption which exceeded that ability should not be characterized as in the nature of support. . . .
 {¶ 27} "If the bankruptcy court finds the loan assumption too excessive to be fairly considered `in the nature of' support it must then set a reasonable limit on the non-dischargeability of that obligation for purposes of bankruptcy (footnotes and citations admitted). Id. at pgs. 1108-1110."
 {¶ 28} Mr. Carey's counsel has informed this court that he has filed bankruptcy. Counsel has also informed us that the Careys' creditors may not wish to pursue her for those joint obligations for which Mr. Carey has received a discharge. In any event, we believe the trial court properly retained jurisdiction to revisit the question of Mr. Carey's alimony obligation "to determine the practical effect of the discharge of his joint obligation of the parties upon Mrs. Carey's ability to sustain her daily needs." As indicated in the Calhoun decision, the trial court may increase the spousal support obligation of Mr. Carey to Mrs. Carey if without that support his former spouse could not maintain the daily necessities, such as food, housing, and transportation.
 {¶ 29} Therefore, upon remand the trial court should revisit the matter of spousal support in light of Mr. Carey's recent bankruptcy, and should also determine Mr. Carey's spousal support obligation taking into account a maximum work week of fifty hours. The court should also determine Mr. Carey's net pay after tax obligations are taken into account.
 {¶ 30} Mr. Carey's assignments of error are sustained to the extent indicated and the judgment of the trial court is Reversed and Remanded to the trial court for further proceedings consistent with this opinion.
Young, J., concurs.