[Cite as *Watchowski v. Watchowski*, 2010-Ohio-1501.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### HENRY COUNTY

MARK WATCHOWSKI,

    PLAINTIFF-APPELLANT,                  CASE NO.  7-09-07

    v.

LORETTA WATCHOWSKI,               O P I N I O N

    DEFENDANT-APPELLEE.

---

Appeal from Henry County Common Pleas Court
Domestic Relations Division
Trial Court No. 07 DR 102

**Judgment Affirmed**

Date of Decision:   April 5, 2010

---

APPEARANCES:

    *Jeffrey J. Horvath*  for Appellant

    *Loretta S. Watchowski,* Appellee

**ROGERS, J.**

{¶1} Plaintiff-Appellant, Mark Watchowski, appeals from the judgment of the Court of Common Pleas of Henry County, Domestic Relations Division, granting his complaint for divorce and ordering him to pay $500 per month in spousal support. On appeal, Mark argues that the trial court's finding that his ex-wife, Loretta Watchowski, was unable to work due to a disability was against the manifest weight of the evidence; that the trial court abused its discretion in ordering him to pay spousal support of $500 per month for an indefinite duration; and, that the trial court erred in failing to compensate him for Loretta's dissipation of funds and assets, to some of which he was entitled. Based on the following, we affirm the judgment of the trial court.

{¶2} In October 2007, Mark filed a complaint for divorce from Loretta, and in November 2007, Loretta filed an answer to the divorce complaint, requesting spousal support.

{¶3} In March 2008, the trial court filed a consent entry for temporary orders, requiring the parties to file their 2007 income tax returns jointly, with Loretta to receive any refund due; that Mark pay $100 per week in spousal support to Loretta; and, that Loretta use "her best efforts" to adjudicate her Social Security disability claim. (Mar. 2008 Consent Entry, p. 3).

{¶4} In August 2008, pursuant to the agreement of the parties, the trial court ordered Mark to pay Loretta $1,000 per month in spousal support until further order of the court. Subsequently, in April 2009, the trial court ordered that Mark's monthly spousal support obligation be reduced to $500 per month.

{¶5} In July 2009, Loretta filed a DR-1 form detailing her monthly expenses of $2,305. Subsequently, the matter proceeded to a final hearing, at which Mark's trial attorney stated that multiple stipulations had been made and the only issue to be decided at the hearing was spousal support. Mark then testified on direct examination that his monthly income was $2,155.92 after deductions; that he was financially unable to pay spousal support to Loretta; that Loretta had a "spending problem" (hearing tr., pp. 6-7); that she received a $35,000 settlement in 2007 when she lost her job; that, with the settlement money, she spent $3,000 for a horse, $2,500 for a saddle, and also purchased a laptop computer; that she should have used the settlement money to pay off the second mortgage on the residence, but she did not; that, prior to the divorce, they were able to pay all of their bills until Loretta lost her job; that they purchased a jewelry store for Loretta to operate with money he received from an inheritance and an additional mortgage on their residence, but that Loretta "never went to the business and ran it down" (Id. at p. 9); and, that they had to file for bankruptcy in 2006.

**{¶6}** Mark further testified that Loretta had health problems; that she claimed to have headaches every day, and she supposedly had type two diabetes and restless legs syndrome; that he only witnessed symptoms of her restless leg syndrome on one occasion; that Loretta had two children from a prior marriage that he financially assisted during the marriage; that she was probably owed $30,000 or $40,000 in child support because the children's father did not pay child support; and, that Loretta "hid money on [him]." (Id. at p. 14).

**{¶7}** On cross examination, Mark testified that money from the second mortgage on the residence was used for patents on some of his inventions; that his daughter purchased the residence via a land-sale contract after he and Loretta separated, but he was forced to cash in his 401K to pay the mortgage on the residence because his daughter and son-in-law were unable to make the payments; that he spent the remaining amount of the money from his 401K on legal fees for the divorce and medical bills associated with his back injury; and, that he also sold a swimming pool for $2,500 and spent some of that money on making repairs to the residence so it would sell.

**{¶8}** Loretta testified on direct examination that she was owed child support from the father of one of her daughters; that the father did pay some child support during her marriage to Mark, and that she was still owed $6,131.68; that, although Mark financially supported her children, he also had a daughter whom he

aided financially during their marriage; that she did not have a spending problem; that Mark approved most of the purchases she made with her money from the settlement; that she was not able to work twenty out of thirty days per month due to migraines; that she took medication for the migraines daily, and also occasionally received Nubain and Phrenilin injections which impaired her ability to drive; that her migraines "put [her] in a debilitating situation" (Id. at p. 28); that she would not be able to work part-time unless her migraine problem subsided; that she had been attempting to be admitted into the Ann Arbor Migraine Clinic, but there was a waiting list; and, that she sometimes received warnings before her migraines began, but only about ten minutes before they commenced.

{¶9} Loretta further testified on direct examination that when she initially received a determination that she was eligible for Social Security disability, she received a lump payment of $37,682; that, with that money, she spent $720 for an apartment deposit, $6,000 for a down payment on a car; $5,066 for new furniture, $520 for car insurance, $2,200 for attorney fees, with an additional $4,000 to $5,000 to be paid in the future, $303 for renter's insurance, $136.25 for cable television, $2,200 for airline tickets for her son's and daughter-in-law's wedding gift, $408 for glasses, $1,500 to give to a family that allowed her to stay with them when she did not have a place to live, $2,800 to repay her parents money she previously borrowed, $485 for a chiropractic bill, and approximately $13,000 for

miscellaneous items to establish her house, including televisions, bedding, various kitchen and bathroom items, bathroom cabinets, food, and gas; that after these expenses, only $1,912 remained; that she had difficulty retrieving many items from the marital residence because she was not able to get into the house, and she did not think that she would be able to obtain the items; that she was eventually able to retrieve the items, but had to place them in storage; that her current standard of living in her apartment was similar to her standard of living during the marriage; that if she did not receive spousal support, she would not be able to maintain this similar standard of living; and, that her current monthly income was $1,100 per month.

{¶10} On cross-examination, Loretta testified that she paid $111 per month for cable and $212 for cell phone service; that the cell phone bill included her and her daughter's phones; and, that she paid $70.49 monthly for internet access and $81.13 monthly for storage.

{¶11} At the close of the presentation of evidence, the trial court stated the following from the bench regarding Loretta's inability to work due to medical problems:

> **When Social Security disability is granted – I've had some experience with that, and your attorney probably does * * *. It's a pretty rough thing to get approved. They don't just hand out money. So my guess is there were various doctors' reports she had. My guess is perhaps she had to be evaluated by the Social**

**Security doctors. And the fact that they're saying she's disabled, I'm going to have to rely upon that.**

(Id at p. 65).

{¶12} In September 2007, the trial court filed its judgment entry of divorce, finding that Mark's current monthly expenses were $2,085 per month, and Loretta's monthly expenses were $2,303 per month; that all assets and debts of the marriage and all real and personal property had been divided to the mutual satisfaction of the parties; that Loretta received a lump sum Social Security disability settlement of $37,682, of which Mark was entitled to $10,250.15; that Loretta received the entire settlement amount and Mark received nothing; that neither party owed past due spousal support or received a credit for spousal support paid; that Mark must pay $500 per month in spousal support until the death of either party, Mark's retirement, or Loretta's remarriage or cohabitation with an unrelated male; and, that Loretta was required to seek work in the event that she became capable of working in a full or part-time capacity.

{¶13} It is from this judgment that Mark appeals, presenting the following assignments of error for our review.

*Assignment of Error No. I*

**THE TRIAL COURT'S FINDING THAT WIFE IS UNABLE TO WORK WAS AN ABUSE OF DISCRETION AND/OR AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

*Assignment of Error No. II*

**THE TRIAL COURT ABUSED ITS DISCRETION BY ORDERING HUSBAND TO PAY WIFE SPOUSAL SUPPORT AWARD [SIC] FOR AN INDEFINITE DURATION.**

*Assignment of Error No. III*

**THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO COMPENSATE HUSBAND FOR WIFE'S APPARENT DISSIPATION OF ASSETS.**

*Assignment of Error No. I*

{¶14} In his first assignment of error, Mark argues that the trial court's finding that Loretta was unable to work was an abuse of discretion and against the manifest weight of the evidence. Specifically, he contends that the trial court should not have found her to be disabled in the absence of any medical records, expert testimony, or Social Security disability records establishing a disability. We disagree.

{¶15} Appellate courts review a trial court's determination of spousal support for an abuse of discretion. *Borer v. Borer*, 3d Dist. No. 13-09-24, 2009-Ohio-6522, ¶31, citing *Siekfer v. Siekfer,* 3d Dist. No. 12-06-04, 2006-Ohio-5154, ¶15. An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219. When applying the abuse

of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court.  Id.

{¶16} Furthermore, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.  *C.E. Morris Co. v. Foley Const. Co.* (1978), 54 Ohio St.2d 279, 280.  "[W]hen reviewing a judgment under a manifest-weight-of-the-evidence standard, a court has an obligation to presume that the findings of the trier of fact are correct."  *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶24, citing *Seasons Coal Co., Inc. v. Cleveland* (1984), 10 Ohio St.3d 77, 80-81.  Mere disagreement over the credibility of witnesses or evidence is not sufficient reason to reverse a judgment. Id.

{¶17} A trial court's award of spousal support is governed by R.C. 3105.18, which requires the trial court to consider fourteen factors set forth in R.C. 3105.18(C)(1) when determining whether spousal support is appropriate and reasonable, and when determining the nature, amount, terms of payment, and duration of the support.  *Schalk v. Schalk,* 3d Dist. No. 13-07-13, 2008-Ohio-829, ¶28, citing *Lee v. Lee,* 3d Dist. No. 17-01-05, 2001-Ohio-2245.  The factors are as follows:

**(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;**

**(b) The relative earning abilities of the parties;**

**(c) The ages and the physical, mental, and emotional conditions of the parties;**

**(d) The retirement benefits of the parties;**

**(e) The duration of the marriage;**

**(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;**

**(g) The standard of living of the parties established during the marriage;**

**(h) The relative extent of education of the parties;**

**(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;**

**(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;**

**(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;**

**(l) The tax consequences, for each party, of an award of spousal support;**

**(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;**

**(n) Any other factor that the court expressly finds to be relevant and equitable.**

R.C. 3105.18(C)(1)(a)-(n).

{¶18} Although the trial court must consider all of these factors, it is not required to specifically enumerate all of the factors. *Hendricks v. Hendricks,* 3d Dist. No. 15-08-08, 2008-Ohio-6754, ¶31, citing *Schalk,* 2008-Ohio-829, at ¶28. However, the trial court must "make specific findings in order 'to enable a reviewing court to determine the reasonableness of its order to grant or deny a request for spousal support and that the relevant factors within R.C. 3105.18 were considered.'" *Malloy v. Malloy,* 3d Dist. No. 8-08-15, 2009-Ohio-1918, ¶11, citing *Hendricks,* 2008-Ohio-6754, at ¶31.

{¶19} Moreover, in spousal support determinations, a medical diagnosis is unnecessary and, standing alone, insufficient, to substantiate a finding that a spouse is unable to work. *MacMurray v. Mayo*, 10th Dist. No. 07AP-38, 2007-Ohio-6998, ¶16, citing *Billingham v. Billingham*, 2d Dist. No. 18403, 2001 WL 127764. Expert medical testimony is not necessary to prove the cause of the spouse's disability as long as the ailing spouse testifies concerning the disability and is subject to cross examination. *Quigley v. Quigley*, 6th Dist. No. L-03-1115, 2004-Ohio-2464, ¶29; *Gullia v. Gullia* (1994), 93 Ohio App.3d 653, 662.

{¶20} In the case at bar, one of the factors considered by the trial court in awarding Loretta spousal support of $500 per month was her inability to work due to her disability. Although Loretta presented no medical evidence to support a finding that she was disabled, she testified and was subject to cross-examination concerning her inability to work more than ten days out of the month due to severe migraines and her receipt of social security disability payments for her migraines. Furthermore, Mark testified that Loretta claimed to have migraines that prevented her from working.

{¶21} Consequently, because medical evidence to support a finding of a spouse's disability is unnecessary for purposes of awarding spousal support, and because Loretta testified to, and was subject to cross-examination concerning her disability, which was further supported by Mark's testimony and her receipt of Social Security disability benefits, we find that the trial court's finding that Loretta was disabled and unable to work was supported by competent, credible evidence, and that the trial court's reliance upon this factor in awarding spousal support of $500 per month was not an abuse of discretion.

{¶22} Accordingly, we overrule Mark's first assignment of error.

*Assignment of Error No. II*

{¶23} In his second assignment of error, Mark argues that the trial court abused its discretion in ordering him to pay Loretta spousal support for an

indefinite duration. Specifically, he argues that the factors supporting an indefinite spousal support award were not present, as the marriage was of only intermediate duration, Loretta was only forty-five years old, and Loretta was meaningfully employed outside of the home during the majority of the marriage. We disagree.

{¶24} An appellate court reviews the trial court's award of spousal support, including amount and duration, for an abuse of discretion, as set forth in our disposition of Mark's first assignment of error. *Osborne v. Osborne*, 3d Dist. No. 1-95-4, 1995 WL 407402; *Cox v. Cox*, 3d Dist. No. 8-06-17, 2007-Ohio-5769, ¶19.

{¶25} The criteria for the duration of a spousal support award has been addressed by the Supreme Court of Ohio in *Kunkle v. Kunkle* (1990), 51 Ohio St.3d 64, superceded by statute on other grounds as stated in *Cooper v. Cooper,* 6th Dist. No. L-01-1194, 2001 WL 969149, in which the Court stated as follows:

> **"Considering current social and economic conditions, \* \* \* awards of alimony for sustenance and support *should be made terminable upon a date certain in the vast majority of cases wherein both parties have the potential to be self-supporting.*" \* \* \***
>
> **\* \* \* "[I]n cases *involving a marriage of long duration, parties of advanced age, and a homemaker-spouse with little opportunity to develop a career, a trial court may, in the proper exercise of its discretion, award alimony terminable only upon certain contingencies \* \* \*.*"**

-13-

* * *

**\* \* \* The reason for awarding sustenance alimony payable only to a date certain is that the payee's need requiring support ceases, when, under reasonable circumstances, the payee can become self-supporting. Conversely, if under reasonable circumstances a divorced spouse does not have the resources, ability or *potential* to become self-supporting, then an award of sustenance alimony for life would be proper.**

(Emphasis in original). Id. at 68-69, quoting *Koepke v. Koepke* (1983), 12 Ohio App.3d 80, 81. See, also, *Heitzman v. Heitzman*, 3d Dist. No. 3-05-11, 2005-Ohio-4622, ¶¶3-4.

{¶26} In the case at bar, the trial court awarded Loretta $500 per month in spousal support terminable upon the death of either party, Mark's retirement, or Loretta's remarriage or cohabitation with an unrelated male. While Mark is correct in asserting that the parties' marriage was not of extensive duration, being fourteen years, and that Loretta was not of advanced age and had participated in meaningful employment outside the home during parts of the marriage, the trial court based its decision of the amount and duration of spousal support upon a finding that Loretta was disabled and unable to work, and further stated that Loretta must seek work in the event that she became capable of working in a full or part-time capacity.

{¶27} Therefore, because the trial court's decision to award spousal support for an indefinite duration was supported by a finding that Loretta did not have the resources or ability to be self-supporting due to her disability, and because the trial court retained jurisdiction to review the spousal support award, we find there to be no abuse of discretion in the duration of the trial court's spousal support award.

{¶28} Accordingly, we overrule Mark's second assignment of error.

*Assignment of Error No. III*

{¶29} In his third assignment of error, Mark argues that the trial court abused its discretion in failing to compensate him for Loretta's dissipation of assets. Specifically, he asserts that the trial court made findings of Loretta's wasteful spending and his failure to receive a portion of her Social Security disability payment and tax return to which he was entitled, but failed to reduce or even eliminate the spousal support award to compensate for these issues.

{¶30} Initially, we note that the parties entered into several stipulations prior to the July 2009 hearing, including the division of all personal property, as stated by the trial court in its judgment entry. Therefore, the only issue before the trial court at the July 2009 hearing was the amount and duration of spousal support, and Mark cannot now raise the issue of the trial court's failure to properly compensate him through a reduction or elimination of spousal support due to his

failure to receive portions of Loretta's personal property, namely money from her Social Security disability payment and tax refund. See *State v. McCullough,* 3d Dist. No. 12-07-09, 2008-Ohio-3055, ¶20, quoting *In re Avery*, 3d Dist. No. 12-2000-16, 2001-Ohio-2226. ("'[A] stipulation, once entered into, filed and accepted by the court, is binding upon the parties and is a fact deemed adjudicated for purposes of determining the remaining issues in that case."')

{¶31} Additionally, Mark argues that the trial court should also have reduced or eliminated the amount of spousal support awarded to Loretta due to her wasteful and frivolous spending. However, at the hearing, evidence was presented of Loretta's inability to engage in regular and meaningful employment due to her disability, and that her monthly expenses were $2,305, and her monthly income was $1,100. Therefore, even with her receipt of $500 per month in spousal support, Loretta would have over $700 more in monthly expenses than she received in income, thereby forcing her to greatly reduce her spending and eliminate any wasteful and frivolous expenditures. Although we also note that Loretta spent a great deal of money from her lump sum Social Security disability payment, she testified that many of these expenditures were necessary for her to set up a home, and, although we believe some expenses may have been excessive, we do not find any abuse of discretion in the trial court's award of spousal support.

{¶32} Accordingly, we overrule Mark's third assignment of error.

{¶33} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**SHAW and PRESTON, J.J., concur.**

**/jlr**