[Cite as *Mullen v. Mullen*, 2017-Ohio-77.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

BETHANNE MULLEN

    Appellee

    v.

PATRICK MULLEN

    Appellant

C.A. No.    28083

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    2014-05-1216

DECISION AND JOURNAL ENTRY

Dated: January 11, 2017

---

SCHAFER, Judge.

{¶1} Appellant-Defendant, Patrick Mullen, appeals the judgment of the Summit County Court of Common Pleas, Domestic Relations Division, granting a divorce decree. This court affirms in part, reverses in part, and remands.

I.

{¶2} This is a divorce action between Mr. Patrick Mullen and Ms. Bethanne Mullen after 27 years of marriage. Ms. Mullen filed a complaint for divorce, together with a motion for temporary orders and Mr. Mullen answered. Following a hearing on the motion for temporary orders, the court ordered Mr. Mullen to pay temporary spousal support in the amount of $1,300.00 a month. The parties stipulated during trial that Mr. Mullen had a past due support arrearage of $3,672.00.

{¶3} At the time of trial, the parties had no unemancipated children and the majority of their debt had been discharged in bankruptcy. The parties had divided the bulk of their personal

property, but during trial Ms. Mullen identified a number of additional items she would permit Mr. Mullen to have. However, she also stated that Mr. Mullen had admitted to taking her jewelry after they had separated. Mr. Mullen denied having the jewelry, but the trial court resolved the issue in Ms. Mullen's favor. The trial court ordered Mr. Mullen to return the jewelry within thirty days or Ms. Mullen could retain all of Mr. Mullen's personal property then in her possession.

{¶4} At the time of trial, Mr. Mullen was 52 and was employed full-time. Ms. Mullen was 51 and employed part-time as a nurse's aide for two separate employers. The trial court found Ms. Mullen's health issues limited her ability to work full-time. The trial court also determined that a Parent Plus Loan executed in Mr. Mullen's name during the time of the marriage was his sole responsibility. As a result of these findings and other considerations, the trial court awarded Ms. Mullen spousal support in the amount of $1,800.00 per month. Additionally, the trial court ordered Mr. Mullen to maintain life insurance naming Ms. Mullen as beneficiary in an amount sufficient to satisfy his obligation of spousal support, during the pendency of his support obligation.

{¶5} Mr. Mullen now brings this timely appeal, raising three assignments of error for our review.

II.

**Assignment of Error I**

**The trial court erred in permitting [Ms. Mullen] to retain [Mr. Mullen's] personal property, including his separate property, unless he gave wife property which he did not have in his possession.**

{¶6} In his first assignment of error, Mr. Mullen contends the trial court erred when it found that Ms. Mullen may retain all of his personal property already in her possession if he did

not return her personal property. However, at oral argument, the parties agreed that Ms. Mullen had found the missing jewelry and returned Mr. Mullen's personal property to him. Therefore, Mr. Mullen's first assignment of error is moot and we decline to address the merits. *See Bayview Loan Servicing, LLC v. Salem*, 9th Dist. Summit No. 27460, 2015-Ohio-2615, ¶ 7 quoting *Aurora Loan Servs v. Kahook*, 9th Dist. Summit No. 24415, 2009-Ohio-2997, ¶ 6 ("Appellate courts will not review questions that do not involve live controversies.").

## Assignment of Error II

**The trial court erred in awarding [Ms. Mullen] spousal support on an equalization-of-income basis and without taking into account [Mr. Mullen's] obligation to pay the Parent Plus Loan and in the absence of expert evidence of [Ms. Mullen's] inability to work on a full-time basis.**

{¶7} In his second assignment of error, Mr. Mullen contends the trial court erred by awarding Ms. Mullen spousal support on an equalization-of-income basis without consideration of Mr. Mullen's obligation on a Parent Plus Loan executed during the marriage and without the presentation of expert evidence as to Ms. Mullen's health and work limitations.

{¶8} "We review a trial court's award of spousal support for an abuse of discretion." *Stickney v. Stickney*, 9th Dist. Medina No. 14CA0099-M, 2016-Ohio-3379, ¶ 25 citing *Jeffery v. Jeffery*, 9th Dist. Wayne No. 06CA0046, 2007-Ohio-4482, ¶ 7. An abuse of discretion implies the trial court's judgment was unreasonable, arbitrary, or unconscionable. *Id.* citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶9} An award of spousal support is controlled by R.C. 3105.18, which states in pertinent part:

> (C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:

(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;

(b) The relative earning abilities of the parties;

(c) The ages and the physical, mental, and emotional conditions of the parties;

(d) The retirement benefits of the parties;

(e) The duration of the marriage;

(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;

(g) The standard of living of the parties established during the marriage;

(h) The relative extent of education of the parties;

(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;

(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

(l) The tax consequences, for each party, of an award of spousal support;

(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

(n) Any other factor that the court expressly finds to be relevant and equitable.

**{¶10}** In this case, the trial court specifically addressed each of the relevant aforementioned factors, including that Mr. Mullen earns three to four times more than Ms. Mullen, Mr. Mullen has a greater earning ability, the parties are older and Ms. Mullen's health issues limit her ability to work, Ms. Mullen will likely draw spouse's benefits on Mr. Mullen's

Social Security account, the long term of the marriage, their modest standard of living, their limited assets, Mr. Mullen's obligation on the Parent Plus Loan, Mr. Mullen's court order for child support for a child born outside the marriage, Ms. Mullen's contribution to Mr. Mullen's earning ability through her role has a homemaker, the tax consequences of a spousal support award, and Ms. Mullen's lost income production capacity as a result of fulfilling her marital obligations as a homemaker. The trial court found, based on these factors, that it was appropriate and reasonable for Mr. Mullen to pay Ms. Mullen spousal support in the amount of $1,800.00 per month, plus a 2% processing charge.

## A. The Parent Plus Loan

{¶11} With regard to the trial court's consideration of the Parent Plus Loan, Mr. Mullen argues that the trial court erred when it found the loan was Mr. Mullen's separate debt and that it should have been considered a marital debt for the purposes of awarding spousal support. Prior to considering appropriate and reasonable spousal support, a trial court must determine what constitutes marital property or separate property and then divide the marital property equitably between the spouses. R.C. 3105.18(B); R.C. 3105.171. We have recognized that "[a]lthough the allocation of debt is not specifically addressed in the statute the division of property also includes marital debt." *Smith v. Smith*, 9th Dist. Summit No. 26013, 2012-Ohio-1716, ¶ 8, citing *Hines v. Hines-Ramsier*, 9th Dist. Wayne No. 10CA0059, 2011-Ohio-6093, ¶ 5. Debts incurred during the marriage are presumed to be marital unless it is proved they are separate. *Kehoe v. Kehoe*, 8th Dist. Cuyahoga No. 97357, 2012-Ohio-3357, ¶ 14, citing *Vergitz v. Vergitz*, 7th Dist. Jefferson No. 05 JE 52, 2007-Ohio-1395, ¶ 12. Whether a loan was incurred during a marriage is the determinative factor. *Id.*, citing *Nemeth v. Nemeth*, 11th Dist. Geauga No. 2007-G-2791, 2008-Ohio-3263; *see also Cross v. Cross*, 8th Dist. Cuyahoga No. 102627, 2015-Ohio-5255, ¶

35 (concluding that where a party does not argue a student loan incurred during the marriage for the benefit of an emancipated child in the other party's name was done over her objection or that the other party acted unilaterally, that party fails to prove the debt was non-marital).

{¶12}   In this case, the record shows the Parent Plus Loan was executed during the time of the marriage and with Ms. Mullen's knowledge and consent.  Ms. Mullen testified that she was " * * * the one who did all the financial aid for the children and their colleges" and that the couple took out a Parent Plus Loan in September 2006 in the amount of $15,500.00 when their oldest son started college.  Further, in her reply brief, Ms. Mullen does not argue that the Parent Plus Loan was not a marital debt.  Rather she argues it was equitable for the trial court to allocate the entire debt to Mr. Mullen due to a number of factors.  Although Mr. Mullen did not testify with regard to the Parent Plus Loan, the evidence presented at trial showed he was responsible for a monthly payment, starting at $235.54 per month and increasing biyearly under a graduated payment plan until paid off.  The evidence further showed that the balance of that loan as of August 11, 2014, was $33,094.54 and the estimated total amount to be paid during repayment was $75,139.44.

{¶13}   However, in this case, the trial court did not make a specific finding of whether the Parent Plus Loan was a separate debt or a marital debt, but did determine that "Husband shall pay, indemnify and hold Wife harmless on the debt to the Sallie Mae Corporation * * *."  In reaching this conclusion the trial court found that "the parties have discharged their debts in bankruptcy.  The husband has a debt known as a Parent Plus Loan through the Sallie Mae program.  Exhibits provided by both parties reference only the Husband."  As we cannot conclude from the trial court's journal entry whether it determined the Parent Plus Loan was a separate debt or a martial debt equitably distributed in its entirety to Mr. Mullen, we must

remand this matter to the trial court to make that determination in the first instance. If the trial court determines the Parent Plus Loan is a marital debt, it must then determine an equitable distribution of the Parent Plus Loan and consider that distribution in the determination of appropriate and reasonable spousal support pursuant to R.C. 3105.18.

**B. Consideration of Health Issues when Determining Spousal Support**

{¶14} With regard to the trial court's consideration of Ms. Mullen's health issues in the determination of spousal support, Mr. Mullen contends that the trial court erred and abused its discretion because no expert evidence was presented as to a diagnosis or its impact on Ms. Mullen's ability to work. However, a party is not required to present expert evidence to prove the cause of a spouse's disability as long as the ailing spouse testifies concerning the disability and is subject to cross examination. *Watchowski v. Watchowski*, 3d Dist. Henry No. 7-09-07, 2010-Ohio-1501, ¶ 19, citing *Quigley v. Quigley*, 6th Dist. Lucas No. L-03-1115, 2004-Ohio-2464, ¶ 29; *MacMurray v. Mayo*, 10th Dist. Franklin No. 07AP-38, 2007-Ohio-6998, ¶ 16. In this case, Ms. Mullen testified that she often works between 32 and 36 hours per week, but is not able to work full-time because she suffers from Charcot, Marie, Tooth disease, a progressive disease which sometimes causes her walking problems. Mr. Mullen's trial counsel had the opportunity to cross-examine Ms. Mullen with regard to this testimony, but failed to do so. The only evidence offered to rebut Ms. Mullen's testimony was Mr. Mullen's statements that although he was aware Ms. Mullen had seen a doctor for her condition for three years, she had not gotten a specific diagnosis and that in order for her to receive a specific diagnosis, she would have to travel to Washington, D.C. and have testing done.

{¶15} As the trial court was in the best position to assess the credibility of the witnesses' testimony, we cannot conclude it was an abuse of discretion for the trial court to consider Ms.

Mullen's health limitations when awarding spousal support in this case. Accordingly, we overrule Mr. Mullen's second assignment of error as it relates to the trial court's consideration of the impact of Ms. Mullen's health issues on her ability to work full-time.

{¶16} Therefore, Mr. Mullen's second assignment of error is sustained in part and overruled in part.

### Assignment of Error III

**The trial court erred in ordering [Mr. Mullen] to maintain life insurance to secure his spousal support obligation.**

{¶17} In his third assignment of error, Mr. Mullen contends the trial court erred in ordering him to maintain life insurance to secure his spousal support obligation when the divorce decree expressly provides that spousal support will terminate upon the death of either party. We agree.

{¶18} "This [C]ourt has consistently held that a trial court errs in ordering an obligor to secure a spousal support obligation terminable upon death with life insurance." *Krone v. Krone*, 9th Dist. Summit No. 25450, 2011-Ohio-3196, ¶ 28, compiling cases. However, a trial court does not abuse its discretion by ordering an obligor to secure payment of an arrearage of spousal support payments with a life insurance policy. *Karis v. Karis*, 9th Dist. Summit No. 2380, 2007-Ohio-759, ¶ 18.

{¶19} In this case, the divorce decree states that Mr. Mullen's support obligation is terminable upon his death, Ms. Mullen's death, or Ms. Mullen's remarriage. Although Mr. Mullen acknowledged an arrearage of spousal support in the amount of $3,672.00, the order to maintain life insurance in the divorce decree specifically states "Husband shall maintain life insurance on his life, naming Wife as an irrevocable beneficiary in an amount sufficient to satisfy his obligation of spousal support, during the pendency of his support obligation." Nothing in the

trial court's order would lead us to conclude that Mr. Mullen was required to insure the arrearage. The order does not state that Mr. Mullen must maintain life insurance so long as he has an arrearage of spousal support, but rather he must maintain life insurance during the pendency of his support obligation. Accordingly, the order only contemplates future spousal support and not arrearages. Therefore, we conclude it was an abuse of discretion for the trial court to order Mr. Mullen to maintain life insurance on his spousal support obligation which is terminable upon his death. Therefore, Mr. Mullen's third assignment of error is sustained.

### III.

{¶20} Mr. Mullen's third assignment of error is sustained, his second assignment of error is overruled in part and sustained in part, and his first assignment of error is moot. The judgment of the Summit County Court of Common Pleas, Domestic Relations Division is affirmed in part, and reversed in part and this matter is remanded for further proceedings consistent with this opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

JULIE A. SCHAFER
FOR THE COURT

WHITMORE, P.J.
HENSAL, J.
CONCUR.

APPEARANCES:

LESLIE S. GRASKE, Attorney at Law, for Appellant.

BRIAN ASHTON, Attorney at Law, for Appellee.