[Cite as *Leyes v. Leyes*, 2026-Ohio-2037.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLINTON COUNTY

| | | |
|---|---|---|
| SHEILA LEYES, n.k.a. SHEILA ELKINS | : | |
| Appellee, | : | CASE NO. CA2025-07-033 |
| vs. | : | OPINION AND JUDGMENT ENTRY 6/1/2026 |
| GARY LEYES, | : | |
| Appellant. | : | |
| | : | |

APPEAL FROM CLINTON COUNTY COURT OF COMMON PLEAS
Case No. DRB 20230260

Rose & Dobyns Co., L.P.A., and Scott B. Evans, for appellee.

Thomas G. Eagle Co., L.P.A., and Thomas G. Eagle, for appellant.

## O P I N I O N

**M. POWELL, J.**

{¶ 1} Appellant, Gary Leyes ("Husband"), appeals a decision of the Clinton County Court of Common Pleas granting the parties a divorce and ordering him to pay

spousal support to appellee, Sheila Leyes, n.k.a. Sheila Elkins ("Wife").[1]

{¶ 2}  The parties were married in July 2006. No children were born as issue of the marriage. On August 3, 2023, after nearly 17 years of marriage, Wife filed for divorce. On December 12, 2024, the matter proceeded to an evidentiary hearing before a magistrate on the unresolved issues between the parties. As pertinent here was the issue of the amount and duration of spousal support. Both parties testified. At the time of the hearing, Husband was 47 years old and Wife was 54 years old. Testimony revealed that both parties have a high school education and that they lived a modest lifestyle and only took one vacation during the marriage.

{¶ 3}  Although Wife worked various minimum wage jobs during the first two years of the marriage, she has not worked outside the home since 2008 and has been a homemaker. Husband is a skilled heavy equipment mechanist who worked for Barrett Paving Materials from 2014 to March 2024, and has been working for Nicholas J. Savko since March 2024. He has been the primary wage earner during the marriage. Husband earns $42 an hour for a 40-hour week and, around 75 percent of the time, he works ten hours of overtime per week at $63 an hour. Husband has a 401K retirement plan with his current employer and had a pension with Barrett. Wife has no retirement accounts.

{¶ 4}  Husband had a double bypass heart surgery in May 2021 but is presently working full time and overtime. He is followed by a cardiologist and takes medication for high blood pressure and high cholesterol. Husband believes he will not live long enough to enjoy retirement and will work until he dies. Wife is disabled and suffers from COPD (Chronic Obstructive Pulmonary Disease) and emphysema, Graves disease, which triggered hyperthyroidism and resulted in a 62-pound weight loss, and PTSD from a

---

1. The trial court restored appellee to her former name, Sheila Elkins.

previous abusive relationship. Wife has also had four neck surgeries, is awaiting a fifth surgery, and has a cadaver bone in her neck held in place by a metal plate and screws. Her May 2024 neck surgery paralyzed a vocal cord, leaving her with only one functioning vocal cord. She was recently referred to an oncologist for a skin tissue condition that is in stage three of becoming cancerous. Wife takes multiple medications for pain and breathing/lung issues, and medication for heart issues. Husband testified he was aware of Wife's medical issues before they were married. Husband also acknowledged that Wife has undergone surgeries on her neck for degenerative disc disease and has COPD, and conceded they are serious medical issues.

{¶ 5} On February 6, 2025, the magistrate issued a decision recommending that Husband pay Wife a "lump sum award of spousal support of $18,000" and $2,400 a month in spousal support indefinitely, terminable upon Wife's cohabitation or remarriage or the death of either party. The magistrate further recommended that the trial court retain jurisdiction over the duration and amount of spousal support. In awarding spousal support to Wife, the magistrate found that the parties had a long term marriage of 18 years; that Wife receives a net monthly income of $582.10 in Social Security disability benefits; that Husband's 2024 income was $111,930 based upon his testimony regarding his 40-hour week and overtime; and that whereas Husband has the ability to and does work overtime hours 75 percent of the time, Wife has no earning ability, cannot seek education or obtain additional job training or experience, and cannot be self-supporting due to her severe medical issues.

{¶ 6} Based upon the calculation of Husband's 2024 income of $111,930, and applying a 20 percent tax rate, the magistrate found that Husband had a monthly net income of $7,462 and that Wife had a monthly net income of $582.10. Based upon the parties' testimony, the magistrate found that Husband had monthly expenses of

$2,997.84, leaving him with a monthly income of $4,464.16, and that Wife had monthly expenses of $2,324.80, leaving her with a negative monthly income of -$1,742.70. Based upon the foregoing, the magistrate determined that a monthly spousal support of $2,700 was appropriate. However, because Husband was ordered to pay Wife a $18,000 lump-sum award of spousal support to allow her to refinance the mortgage on the marital home and extinguish Husband's liability thereon, the magistrate reduced Husband's monthly spousal support obligation to $2,400 per month. The magistrate's $300 reduction in Husband's monthly spousal support obligation allows Husband to recapture the $18,000 lump-sum spousal support payment in five years.

{¶ 7} Husband filed several objections to the magistrate's decision. On June 26, 2025, the trial court sustained Husband's objection to the indefinite duration of spousal support and ordered Husband to pay Wife $2,400 a month in spousal support for 120 months. The trial court overruled Husband's remaining objections to the magistrate's decision.

{¶ 8} Husband now appeals, raising one assignment of error:

{¶ 9} THE TRIAL COURT ERRED IN AWARDING SPOUSAL SUPPORT.[2]

{¶ 10} A trial court has broad discretion in determining whether to award spousal support, as well as the amount and duration of such award, based on the facts and circumstances of each case. *Price v. Price*, 2025-Ohio-2479, ¶ 31 (12th Dist.). Absent an abuse of discretion, a spousal support award will not be disturbed on appeal. *Id.* A trial

2. The above-quoted assignment of error is found in the body of Husband's appellate brief. The brief's table of contents states a strikingly different assignment of error: "The Trial Court Erred in Imposing the Sanction of Exclusion of Evidence at Trial for a Pretrial Discovery and Disclosure Omission." The assignment of error listed in the body of Husband's brief is therefore not consistent with the assignment of error listed in the table of contents and violates this court's Loc.R. 11(B)(3). *Wightman v. Darty*, 2023-Ohio-3748, ¶ 12, fn. 3 (12th Dist.). Because the assignment of error in the table of contents is not related to the substance of Husband's argument which challenges the award of spousal support, we assume it was erroneously included in the brief and that Husband's actual assignment of error is the one found in the body of the brief and quoted above. *State v. Runion*, 2022-Ohio-2461, ¶ 6, fn. 1 (12th Dist.).

court abuses its discretion where, based upon the totality of circumstances, its decision is arbitrary, unreasonable, or unconscionable. *Bixler v. Bixler*, 2017-Ohio-7022, ¶ 15 (12th Dist.). In determining whether spousal support is appropriate and reasonable, the trial court has a statutory duty to base its spousal support order on a careful and full balancing of the factors in R.C. 3105.18(C)(1); *Mann v. Muktarian*, 2025-Ohio-4404, ¶ 8 (12th Dist.). The statutory factors include the income of the parties, the parties' earning abilities, their age and physical, mental, and emotional conditions, the duration of the marriage, the standard of living during the marriage, the parties' education, and the parties' assets.

{¶ 11} Husband argues that the trial court erred in awarding Wife spousal support, raising four issues for review. Specifically, Husband challenges the trial court's lump-sum award of spousal support, the inclusion of overtime pay in the court's calculation of Husband's income, the application of a 20 percent tax rate, and the trial court's determination Wife cannot be self-supporting.

**Trial Court's Lump-Sum Award of Spousal Support**

{¶ 12} Husband challenges the trial court's $18,000 up-front, lump-sum award of spousal support, arguing it is not subject to the trial court's reservation of jurisdiction, thereby "making it un-terminable and not modifiable" and leaving him without recourse once it is paid.

{¶ 13} Although Husband filed objections to the magistrate's decision, he did not specifically object to the $18,000 lump-sum award of spousal support. Civ.R. 53(D)(3)(b) requires a party to make timely, specific objections to a magistrate's decision, identifying any error of fact or law in the magistrate's decision and stating with particularity all grounds for objection. Civ.R. 53(D)(3)(b)(ii); *Schaible v. Schaible*, 2025-Ohio-5799, ¶ 20 (12th Dist.). "Except for a claim of plain error, a party is prohibited from assigning as error on appeal the trial court's adoption of any finding of fact or legal conclusion, unless that

party has objected to that finding or conclusion." Civ.R. 53(D)(3)(b)(iv).

{¶ 14} Establishing plain error in civil cases is an onerous burden. "In applying the doctrine of plain error in a civil case, reviewing courts must proceed with the utmost caution, limiting the doctrine strictly to those extremely rare cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice, and where the error complained of, if left uncorrected, would have a material adverse effect on the character of, and public confidence in, judicial proceedings." *Goldfuss v. Davidson*, 1997-Ohio-401, ¶ 24. Husband does not claim plain error, much less argue why this is one of those rare cases involving exceptional circumstances requiring application of the civil plain error doctrine. Therefore, because Husband did not file an objection to the lump-sum award of spousal support in accordance with Civ.R. 53(D)(3)(b), he has waived his right to appeal this issue. *Roberts v. Roberts*, 2013-Ohio-1733, ¶ 19 (12th Dist.).

### Trial Court's Inclusion of Husband's Overtime Pay in its Calculation of Husband's Income

{¶ 15} Husband argues that the trial court erred by including his overtime hours and pay in calculating his income for spousal support purposes because the amount of overtime he works is not guaranteed. In support of his argument, Husband cites *Carey v. Carey*, 2004-Ohio-770 (2d Dist.). Husband further argues that should overtime be included, R.C. 3119.05(D) offers guidance.

{¶ 16} Although R.C. 3105.18(C)(1) does not specifically require a trial court to consider overtime pay when determining a party's income for spousal support purposes, the statute does direct the court to consider the party's income "from all sources." R.C. 3105.18(C)(1)(a); *Lanzillota v. Lanzillotta*, 2013-Ohio-4050, ¶ 25 (1st Dist.); *Altier v. Altier*, 2015-Ohio-1526, ¶ 36 (5th Dist.). Husband's testimony plainly indicates he regularly earns overtime income as a skilled heavy equipment mechanist. Specifically, Husband testified

that he worked for Barrett from 2014 to March 2024, and that he has been working for Savko since March 2024. Husband testified that he worked overtime at Barrett "three-quarters of the time," and that in 30 of the preceding 34 weeks since working for Savko, he has worked overtime "about every other day . . . at least." Husband described his overtime at Savko as "typical range is 40 to 50 hours per week roughly." In light of this testimony and R.C. 3105.18(C)(1)(a)'s requirement to consider a party's income "from all sources," the trial court did not err in including overtime pay in calculating Husband's income for spousal support purposes.

{¶ 17} Husband cites *Carey* for the proposition that requiring a spouse to work overtime hours to meet a spousal support obligation is unreasonable, particularly when considering the payor spouse's age and health. Husband's reliance on *Carey* is misplaced. In that case, the husband argued that the trial court abused its discretion in making an award of spousal support premised on him working 60 hours a week. While the husband conceded that "he regularly received overtime pay" and that "working 40 or 50 hours a week [was] not unreasonable in light of his age and health," he argued that a "60-hour work week [was] excessively onerous." *Carey*, 2004-Ohio-770, at ¶ 18 (2d Dist.). The court of appeals agreed. Although it noted that in the context of child support, "[s]ome courts have held that an obligated parent should not be required to work more than a 40 hour week when an adequate support order could be made out of the obligor's base salary," it found that "the better view is that a trial court may consider regular overtime pay in calculating the income of a spouse for purposes of setting . . . spousal support." *Id.* at ¶ 13, 18. The court of appeals held the trial court abused its discretion in imposing a spousal support order that required the husband to work a 60-hour work week, and ordered the trial court to recalculate the husband's obligation on the basis of a 50-hour week instead. *Id.* at ¶ 18, 29.

{¶ 18} Here, unlike in *Carey*, the trial court did not premise its spousal support award on Husband having to regularly work 60-hour weeks. *Copley v. Copley*, 2020-Ohio-6669, ¶ 25 (4th Dist.). Rather, based upon Husband's testimony, the court simply included the ten hours of overtime a week Husband receives about 75 percent of the time. In addition, the trial court specifically retained jurisdiction to modify the amount or terms of the spousal support order. Thus, should Husband's employer decrease or no longer offer overtime, Husband may move to modify his spousal support obligation based on a change in circumstances. *Zornes v. Zornes*, 2006-Ohio-877, ¶ 23 (12th Dist.).

{¶ 19} We decline Husband's suggestion to use R.C. 3119.05(D) as guidance. R.C. Chapter 3119 governs calculation of child support obligations. R.C. 3119.05(D) requires that when calculating a parent's gross income from overtime for child support purposes, the trial court must include the lesser of the previous year's overtime or the average of the overtime received during the previous three years. By contrast, in determining the amount and duration of spousal support, the trial court need only consider the income of the parties, from all sources. Thus, the determination of spousal support is not limited by the definition and calculation of gross income used for child support determinations. Accordingly, R.C. 3119.05(D) is inapplicable here.

**Tax Rate Used to Calculate Husband's Monthly Income**

{¶ 20} Husband argues the trial court erred in calculating his income for spousal support purposes by assuming a 20 percent income tax rate because his W-2s for 2021 and 2022 show "actual tax rates of 23% and 24%" and his earnings statements for 2022 and 2023 show "a tax rate of 31%." However, these documents do not accurately reflect an individual's effective income tax rate because they do not reflect deductions from income and credits against taxes. As Wife correctly states, and Husband concedes, a W-2 form is merely a tax form prepared by an employer to reflect the income withheld by the

employer from the income of the employee and therefore does not necessarily represent the ultimate tax liability. Furthermore, no income tax returns were submitted as evidence for 2021, 2022, and 2023 and no testimony was offered establishing the tax rate actually paid by Husband. We therefore find no error in the trial court assuming a 20 percent tax rate.

**Trial Court's Determination that Wife Cannot Be Self-supporting**

{¶ 21} Husband argues that the trial court erred in finding that Wife cannot be self-supporting in the absence of any medical records and medical expert testimony. In support of his argument, Husband also cites Wife's testimony that "she is able to drive and go places like other people, which would allow her to produce some income."

{¶ 22} Ohio courts have held that in spousal support determinations, a medical diagnosis is unnecessary and, standing alone, insufficient to support a finding that a spouse is unable to work. *Watchowski v. Watchowski*, 2010-Ohio-1501, ¶ 19 (3d Dist.); *Quigley v. Quigley*, 2004-Ohio-2464, ¶ 29 (6th Dist.). "Unlike personal injury cases, where medical testimony is required to prove a causal relationship between a physical injury and the act that gave rise to such injury, in divorce cases, the medical cause of a spouse's disability 'is not an essential fact requiring proof.'" *Quigley* at ¶ 29, quoting *Milam v. Milam*, 1994 WL 579722 (2d Dist. Oct. 19, 1994). Thus, expert medical testimony is not required to prove the cause of a spouse's disability as long as the ailing spouse testifies concerning the disability and is subject to cross examination. *Id.*; *Watchowski* at ¶ 19; *Mullen v. Mullen*, 2017-Ohio-77, ¶ 14 (9th Dist.).

{¶ 23} Furthermore, R.C. 3105.18(C) neither imposes a duty to seek employment nor makes failure to seek employment a determinative factor to consider. Rather, the relevant and determinative factor is "the relative earning abilities of the parties." R.C. 3105.18(C)(1)(b); *Bunjevac v. Bunjevac*, 2002-Ohio-2956, ¶ 45 (8th Dist.). "'Earning

ability' involves both the amount of money one is capable of earning by his or her qualifications, as well as his or her ability to obtain such employment." *Bevan v. Bevan*, 2006-Ohio-2775, ¶ 29 (11th Dist.), quoting *Haninger v. Haninger*, 8 Ohio App.3d 286, 288 (10th Dist. 1982).

{¶ 24} The record shows that Wife suffers from COPD and early stage three emphysema, Graves disease, degenerative disc disease, and PTSD. She has had four neck surgeries, is awaiting a fifth surgery, was recently referred to an oncologist for a concerning skin tissue condition, and takes multiple medications for pain and breathing/lung issues. She testified that she was already suffering from COPD and had her first surgery a few months before she married Husband. At Husband's request, she went back to work too soon after surgery which exacerbated her spinal issues and resulted in additional surgeries and her leaving the work force in 2008. Wife testified that her latest neck surgery entailed drilling her spine open to relieve some of the nerve pressure and remove a lot of scar tissue. She testified that emphysema makes her tired all the time and she wakes up several times a night. She cannot have a desk job or otherwise use her skills because her limbs are affected by nerve damages, she has no air in her lungs most of the time, and there are days she wakes up voiceless. On cross-examination, Wife testified that she has suffered from PTSD since 1998 and that it has gotten worse over the years. She also testified that due to the severe nerve damage and the resulting pain, she cannot reliably use her limbs because they might suddenly jerk and she never knows how her body will react to any activity.

{¶ 25} In determining that Wife cannot be self-supporting, the trial court was in the best position to view the witness, observe her demeanor, and assess the credibility of her testimony. The trial court did not abuse its discretion by crediting Wife's testimony and considering her multiple and severe health limitations when awarding her spousal

support. *See Mullen*, 2017-Ohio-77 (9th Dist.).

{¶ 26} The record shows that the trial court reviewed all relevant R.C. 3105.18(C)(1) factors in determining the amount and duration of the spousal support award. Husband ultimately disagrees with the weight the trial court afforded the applicable factors and the conclusions it drew from the evidence. However, Husband's disagreement with the trial court's decision is insufficient to demonstrate that the trial court abused its discretion. *Price*, 2025-Ohio-2479, at ¶ 34 (12th Dist.); *Reynolds v. Reynolds*, 2026-Ohio-309, ¶ 10 (12th Dist.). We therefore find that the trial court did not err in ordering Husband to pay Wife a $18,000 lump-sum award of spousal support and $2,400 a month in spousal support for a period of 120 months.

{¶ 27} Husband's assignment of error is overruled.

{¶ 28} Judgment affirmed.

HENDRICKSON, P.J., and PIPER, J., concur.

## JUDGMENT ENTRY

The assignment of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Clinton County Court of Common Pleas for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

*/s/ Robert A. Hendrickson, Presiding Judge*

*/s/ Robin N. Piper, Judge*

*/s/ Mike Powell, Judge*